# THE COVENANT MUTUAL LIFE ASSOCIATION OF ILLINOIS

*v.*

## FANNIE KENTNER.

*Opinion filed December 20, 1900.*

1. BENEFIT SOCIETIES—*that society's contract is unilateral does not bar recovery.* The action of a member of a benefit society upon the faith of a promise made by the society renders the latter liable, and when it has had the benefit of the consideration for which it bargained it is no answer to a suit on its agreement to say that the member was not bound by the contract to pay the consideration.

2. SAME—*law does not undertake to make or modify insurance contracts.* The law does not undertake to make or modify contracts, whether they relate to insurance or some other object, but enforces them as the parties have made them.

3. SAME—*it is not presumed that member contemplated a change in his contract.* A benefit society has power to pass by-laws regulating its business, and a member is presumed to have contemplated such by-laws, but there is no presumption that he contemplated a change by the society in the terms of his contract.

4. SAME—*when by-laws cannot be said to be a part of the contract.* If there is nothing in the contract of insurance making any reference to by-laws, and there is nothing in the record of a suit on the certificate showing what by-laws were in force when the certificate was issued, it cannot be said that any provision of the by-laws was a part of the contract.

5. SAME—*future by-laws do not bind member unless it is so provided.* Even if a benefit certificate states that the by-laws are a part of the contract and that they are subject to amendment, subsequent by-laws will be construed to apply only to contracts made after their adoption, unless there is an express agreement that a member shall be bound by future by-laws.

6. ESTOPPEL—*element of fraud is essential to estoppel in pais.* The effect of an estoppel *in pais* is to conclude a party from gainsaying acts or admissions which have so influenced the conduct of another that it would work a fraud to permit him to assert what his previous acts and admissions have denied.

7. DAMAGES—*damages in benefit certificate are presumed to be the full amount.* In a suit on a benefit certificate providing for the payment of the amount thereof if an assessment would yield that much, the damages are presumed to be the full amount of the certificate, in the absence of evidence that they are less because an assessment would not realize the full amount.

*Covenant Mutual Life Ass. v. Kentner,* 89 Ill. App. 495, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lee county; the Hon. JAMES SHAW, Judge, presiding.

WALKER & PAYNE, and WALL, ROSS & KIRKMAN, for plaintiff in error:

The by-laws of the association then existing were a part of the contract, whether referred to or not; and as they reserve the right of amendment, the certificate holder must be bound by such amendments subsequently made as are necessary to preserve the association and enable it to perform its functions and meet its obligations. 3 Am. & Eng. Ency. of Law, (2d ed.) 1064-1081; Bliss on Life Insurance, (2d ed.) sec. 463; May on Insurance, (3d ed.) 552; Niblack on Mutual Benefit Societies, (2d ed.) sec. 136; Bacon on Mutual Benefit Societies, 160; *Benefit Ass.* v. *Spies,* 114 Ill. 468; *Barbot* v. *Life Ass.* 100 Ga. 681; *Supreme Lodge* v. *Knight,* 117 Ind. 489; *Phister* v. *Garwig,* 122 id. 567; *Poultney* v. *Bachman,* 31 Hun, 49; *Stohr* v. *Mutual Fund Society,* 83 Cal. 557; *Figure* v. *Mutual Society,* 46 Vt. 369; *Davidson* v. *Benefit Society,* 29 Minn. 303; *Insurance Co.* v. *VanWinkle,* 12 N. J. Eq. 333.

In a mutual benefit association, where all certificate holders are members and alike interested in assessments and benefits, equality in respect to assessments and benefits is fundamental and essential. Hence the law presumes that the members necessarily contemplate a plan and management upon the basis of equality, and such changes for that purpose, from time to time, as will enable the association to go on and accomplish the design of its existence. The plan and the changes therein must be determined by a majority of the members, and since the contract is unilateral, those who dissent may withdraw, but those who remain are bound. *Seymour* v. *Life Ass.* 35 N. Y. Sup. 793; *Bruce* v. *Insurance Co.* 58 Vt. 250; *Figure* v. *Mutual Society,* 46 id. 469; *Stohr* v. *Mutual Fund*

*Society*, 82 Cal. 557; *Fullenwider* v. *Royal League*, 72 Ill. App. 321.

Having the right to withdraw, and not doing so, but continuing his membership by paying the assessment called for by changes, a certificate holder must be held to have consented to such changes. Hermann on Estoppel, chap. 20, sec. 1297, *et seq.*

MORRISON, BETHEA & DIXON, for defendant in error:

By-laws have a prospective and not a retrospective effect. Niblack on Benefit Societies, (2d ed.) secs. 25, 26, 136, pp. 61, 62, 274; *Mutual Aid Ass.* v. *Wanner*, 24 Ill. App. 359; *Hobbs* v. *Association*, 82 Iowa, 107; *Morrison* v. *Insurance Co.* 59 Wis. 165; *Voigt* v. *Kersten*, 164 Ill. 314; Endlich on Interp. of Statutes, sec. 273; *Wist* v. *Grand Lodge*, 22 Ore. 271; *Female College* v. *Cooper*, 25 Ill. 148; *Benefit Ass.* v. *Baldwin*, 49 Ill. App. 212; *Brotherhood of Railway Trainmen* v. *Newton*, 79 id. 505; *Insurance Co.* v. *Connor*, 17 Pa. St. 135; *Weiler* v. *Insurance Co.* 92 Hun, 277; *People* v. *Fire Department*, 31 Mich. 458; *Kent* v. *Mining Co.* 78 N. Y. 159; *Becker* v. *Insurance Co.* 48 Mich. 610; *Becker* v. *Benefit Society*, 144 Pa. St. 232.

A by-law and an amendment thereto must be reasonable, and any amendment which entirely changes the scheme of insurance and departs from the original plan is not a reasonable exercise of the reserve power of amendment. Niblack on Mutual Benefit Societies, (2d ed.) sec. 25, p. 58; *Kent* v. *Quicksilver Mining Co.* 78 N. Y. 159.

The court must decide whether a by-law is reasonable. Evidence to a jury on that question is inadmissible. Niblack on Mutual Benefit Societies, sec. 17, p. 32; *Commonwealth* v. *Wochester*, 3 Rich. (Mass.) 461.

The contract of insurance between a member of the company and the company has always been held to be as binding as though made with a stranger, and with no right to change it on the part of the insurer without the consent of the insured. *Rosenberg* v. *Mutual Aid Ass.* 87

Pa. St. 207; Niblack on Mutual Benefit Societies, (2d ed.) sec. 136, p. 273; *Mutual Aid Ass.* v. *Wanner,* 24 Ill. App. 358; *Insurance Co.* v. *Connor,* 17 Pa. St. 136; *Warmbald* v. *Grand Lodge,* 83 Iowa, 27; *Insurance Co.* v. *Knight,* 162 Ill. 470.

Before an insurance company can insist on a forfeiture on account of failure to pay a premium it must show that the assessment was a legal one and made in accordance with the contract. *Tourville* v. *Brotherhood of Locomotive Firemen,* 54 Ill. App. 77; *Bagley* v. *A. O. U. W.* 46 id. 411; *Insurance Co.* v. *Knight,* 162 Ill. 470; *Benefit Ass.* v. *Baldwin,* 49 Ill. App. 203; *Order of Foresters* v. *Zak,* 136 Ill. 185; *Life Ass.* v. *Tuttle,* 87 Ill. App. 321; Niblack on Mutual Benefit Societies, (2d ed.) sec. 250, p. 473; *Traveling Men's Ass.* v. *Schauss,* 148 Ill. 304.

It is a matter of defense in a case of this kind to show that if an assessment had been made it would not have produced the maximum amount named in the certificate, and the burden of proof is upon the association to establish this fact, and unless it be so established the plaintiff has a right to recover the full amount. *S. C. A. L. of H.* v. *Anderson,* 61 Tex. 296; *Earnshaw* v. *Mutual Aid Society,* 68 Md. 465; *Jackson* v. *Relief Ass.* 2 L. R. A. 786; *Mutual Aid Ass.* v. *Houghton,* 103 Ind. 286; *Kansas Pro. Union* v. *Whitt,* 36 Kan. 760; *Taylor* v. *Nat. Temp. Rel. Union,* 94 Mo. 35; *Life Ass.* v. *Lemke,* 19 Pac. Rep. 337; *Nerskin* v. *Legacy Ass.* 15 N. W. Rep. 683; *Leuder's Exr.* v. *Insurance Co.* 12 Fed. Rep. 465; Bacon on Benefit Societies, sec. 453.

The doctrine of estoppel cannot apply in this case. A wrongdoer can never plead estoppel. *Insurance Co.* v. *Knight,* 162 Ill. 470; *Rowell* v. *Life Ass.* 84 Ill. App. 304; *Life Ass.* v. *Baldwin,* 49 Ill. App. 203; *Margesson* v. *Mass. etc.* 42 N. E. Rep. 1132; *Duggan* v. *Life Ass.* 87 Ill. App. 415; *Langdon* v. *Mass. etc.* 44 N. E. Rep. 226; Hermann on Estoppel, secs. 272, 321.

The act of 1883, relating to benefit societies, has no retroactive force. *Moore* v. *Guaranty Fund Life Society,* 178 Ill. 202; *Voigt* v. *Kersten,* 164 id. 314.

Mr. Justice Cartwright delivered the opinion of the court:

Plaintiff in error was organized January 9, 1877, under the general act concerning corporations in force July 1, 1872, as a corporation not for pecuniary profit, under the name of Covenant Mutual Benefit Association. The object for which it was incorporated, as stated in the certificate, was "to afford financial aid and assistance to the widows, orphans, heirs or devisees of deceased members." The subsequent act in force July 1, 1893, for the formation of corporations to transact the business of life or accident insurance upon the assessment plan, also provided that any existing domestic corporation transacting such business might re-incorporate under the provisions thereof. Plaintiff in error re-incorporated by virtue of said provision, and its name was changed to Covenant Mutual Life Association of Illinois. On August 15, 1878, plaintiff in error, then acting under its original incorporation, executed and delivered to William Kentner a certificate of membership in its said association, whereby, in consideration of the representations and agreements made in his application for membership, and the membership fee paid by him, and the payment of such mortuary assessments and expenses in the future as might be required in accordance with the conditions expressed in the certificate, it agreed that upon satisfactory proof of his death an assessment should be levied upon all members liable at the time of his death for the full amount named in their respective certificates, and it would pay to the defendant in error, Fannie Kentner, his wife, within ninety days from such proof of death, the aggregate amount of the assessments, within the limit of $5000, for which amount the certificate was issued. The certificate was so executed, delivered and accepted upon the express conditions and agreements set forth on the back thereof, one of which conditions was, that Mr. Kentner agreed to pay on the death of each and every member of

the association a mortuary assessment never to exceed one dollar, and upon certain conditions only a proportionate amount of that sum, and also to pay for expenses and costs of collection not exceeding thirty cents per month.   Mr. Kentner died April 23, 1899, and proofs of his death were made in accordance with his contract. Plaintiff in error refused to comply with the agreement on its part, on the ground that Mr. Kentner had refused to pay assessment No. 149, for $18.65, called for March 1, 1899.   Defendant in error brought her suit in assumpsit in the circuit court of Lee county to recover the amount of the insurance, alleging, in each count of her declaration, the making of the certificate, the performance by Mr. Kentner of its conditions, the change of name of the corporation, his death and proofs of the same.   In the first count she charged that the defendant levied the assessment provided for by the certificate, and held the same, amounting to the sum of $5000, which she was entitled to, with interest.   In the second, that the membership of the association was large enough to pay her the sum of $5000, and an assessment would be sufficient to pay said amount; and in the third, that the association failed to make an assessment, which would have realized a sum greatly in excess of the amount due her.   The common money counts were added, and the defendant pleaded the general issue, under which it was stipulated by counsel that any defense might be proved.   A jury was thereupon waived and the cause was tried by the court, with a finding and judgment for plaintiff for $5000 and costs.   An appeal was taken to the Appellate Court for the Second District, where the judgment was affirmed.

The first defense made at the trial was, that it was found by the experience of the defendant that it could not perform its contracts with its members as made and continue to do business as an insurance corporation; that the rate agreed upon with Mr. Kentner and others of his class would not meet the cost of insuring them, and it

was necessary to exact from them the cost of such insurance; that it became necessary to increase the assessment against them and compel them to pay more than their contracts called for, and that by reason of said necessity the assessment on them was raised, and call 149 was issued for what insurance was worth, as based on the opinion of insurance experts, for a man of Mr. Kentner's age at the time of the assessment. This defense was, that the corporation had a right to charge, from year to year, whatever insurance was worth at the age of the member, and not according to the terms of the contract, and that Mr. Kentner, having refused to pay assessment No. 149 made on that basis, had forfeited his rights under his certificate. The second defense was, that Mr. Kentner had consented to such a change as was made, and was estopped to deny the power of the association to raise his assessment and compel him to pay as much as it should find the insurance was worth at his age, according to the tables and opinions of experts. The third defense was, that if the certificate was in force and there was the right to recover, no more than nominal damages could be recovered. Propositions of law covering these points were presented to the court by defendant, but were all refused.

One of the propositions submitted to the court and refused was, that the contract in question was unilateral. The proposition was correct, but the court committed no error in refusing it, since the nature of the contract in that respect could not affect the suit in any way. A contract like Mr. Kentner's is unilateral; (*Lehman* v. *Clark*, 174 Ill. 279;) but so is a guaranty, a promissory note, and numerous other contracts in which there is no mutuality of engagement or liability, and it is not necessary that a party to whom a promise is made shall make an express agreement on his part in order to bind the other party. A member of a mutual benefit association who acts upon the faith of a promise made to him by the association

renders it liable, and when it has had the benefit of the consideration for which it bargained, it is no answer to an action on its agreement to say that the member was not bound by the contract to pay such consideration.

The following facts were proved at the trial: When the certificate was issued to Mr. Kentner all the members were divided into five groups, according to ages. The rate of assessment, according to their contracts, ranged from seventy-five cents for the first group to two dollars for the last. Mr. Kentner was thirty-six years old, and was included in the group whose ages were from twenty-nine to forty years. The membership fees, the mortuary assessments and the assessment for expenses were the whole cost of insurance to the members. In 1885 there was a surplus on hand, mostly derived from membership fees, which formed the nucleus of a reserve fund, and a plan was then adopted to accumulate a reserve emergency fund. Assessments were made in accordance with the certificates, but were made larger than was necessary to merely pay the death losses, and the excess was carried to the reserve fund. About March 1, 1890, it was determined to increase the emergency fund and to levy assessments bi-monthly. The form of certificate in use was discontinued, and new members received a certificate under which assessments payable bi-monthly were fixed by a table of rates, and providing for an increase of the assessment every six years to a rate for the age attained at that time. About March, 1893, these policies were abandoned and new policies were afterward issued with a uniform rate during the life of the policy, determined by the age of the assured at the time he became a member. By force of the insurance statute of 1893 the association was required to create a reserve fund and to levy its assessments for more than was necessary merely to pay death losses. This was in accordance with a plan which had already been adopted and which had resulted in a large reserve fund.

On February 5, 1895, the association adopted a table of rates based on age at entry, and resolved to abolish the group plan, under which Kentner entered.   In 1898 the association adopted a by-law providing for assessments according to the age of members at the time of making the assessment.   They were no longer to be based upon the death losses and expenses, with the accumulation of the reserve fund to meet the same, but upon expert opinions and experience as to what it was worth to carry insurance on the members at their respective ages.   Mr. Kentner was then fifty-six years old, and the assessment No. 149 was made under this by-law.   With the call a circular letter was sent to Mr. Kentner informing him of the change in the terms of his contract, and that he would be required to pay $18.65 six times during the current year.   The entire surplus fund on hand then reached the sum of $626,131.86.   There was some attempt by witnesses to separate the certificates issued prior to March 1, 1890, from the others by calling them "post mortem policies," but, as a matter of fact, no such division had ever been made by the association.   The money which members paid went into a common fund, from which losses were paid.   The reserve and all other funds were held in common for the benefit of all members, and, as a matter of fact, were never divided.   This call No. 149, which Mr. Kentner refused to pay, was the first attempt of the association to charge him with what it would cost for insurance at his age in an old line company and gave him the first information of such an attempt.   The association never seems to have claimed the right to change the terms of his certificate in any manner until 1895, when it based a table of rates on his age at the time he became a member, and there is no evidence that he even knew of the nature of that change.

If assessment No. 149 was one which the defendant had a right to make, the refusal of Mr. Kentner to pay it would terminate his rights under the contract; but if it

was one which the defendant had no right to make, he would be justified in his refusal and his contract rights would not be affected by such refusal. This is the principal question in the case, and it is argued in support of the propositions submitted to the court sustaining the validity of the assessment, that it was valid and binding, both on account of the peculiar nature of the corporation and the plan of insurance, and because of the reservation in the by-laws of the power to amend, revise and modify such by-laws. It is said that the law presumes a member of an association like the defendant necessarily contemplates such changes in the plan of insurance, upon the basis of equality, as will enable the association to go on and accomplish the design of its existence, and, therefore, if it cannot fulfill its contracts without a loss it may change them. As to any other contract no one would think of saying that one party can annul the agreement and make another to suit its convenience without the consent of the other party, or that expediency or inability to continue business would warrant repudiating the contract and substituting another. Whatever theories might arise as to duties and obligations not founded upon contract, wherever there is a contract its terms must control the rights of the parties. The law does not undertake to make or modify contracts, whether relating to insurance or to some other subject, but it enforces contracts as the parties themselves have made them. The association had power to make by-laws for the purpose of regulating the transaction of its business and its affairs in general, and Mr. Kentner is presumed to have contemplated such by-laws, but there is no presumption that he contemplated the change in the terms of his contract. It is true that the by-laws of the association existing at the time that he became a member became a part of the contract, and it is to be construed with reference to them. (3 Am. & Eng. Ency. of Law,—2d ed.—1081; Bacon on Mutual Benefit Societies, sec. 160.) Undoubt-

edly, a contract could be so drawn as to express the
entire agreement between the parties and to exclude the
by-laws, and a contract can also be drawn in such a way
as to make future by-laws, varying or modifying it, a part
of the agreement.   In this case there is nothing in the
contract making any reference to by-laws, and there is
nothing in the record to show what by-laws were in force
when the certificate was issued.   As the record is silent
as to what by-laws were in existence, it cannot be said
that any provision of them was a part of the contract in
this case.   If there was any by-law which would in any
manner modify or affect the contract, defendant should
have produced it.   It was stipulated that the by-laws
contained a provision that they might be amended, re-
vised or modified, but that is no more than the law would
imply without the stipulation.   Such power is implied
from the general power to enact by-laws. (3 Am. & Eng.
Ency. of Law,—2d ed.—1064; *Fullenwider* v. *Royal League,*
180 Ill. 621.)   If a member agrees that future by-laws
or amendments shall enter into and form a part of his
contract and modify or vary it, he will be bound by such
by-laws or amendments because they are a part of his
contract.  That was the case in *Fullenwider* v. *Royal League,*
*supra.*  In that case the certificate provided for a payment
of certain rates for the widows' and orphans' benefit fund,
and the certificate was on the express condition that the
member should comply in the future with the laws, rules
and regulations that might thereafter be enacted by the
supreme council to govern said council and fund, all of
which were made part of the contract.   The insured ex-
pressly assented to the conditions, and it was held that
the agreement authorized a change in the rate of assess-
ment under a by-law which, in the opinion of the court,
was not unreasonable.  Even if the certificate states that
the by-laws are a part of the contract and that they are
subject to amendment, subsequent by-laws will be con-
strued to apply only to contracts made after the adop-

tion of such by-laws, in the absence of an agreement that they shall have a retrospective effect. This is upon the principle that all laws and by-laws have a prospective and not a retrospective effect, unless the intent that they shall have a retrospective effect is clear and unmistakable.    Unless there is an express agreement that a member shall be bound by future by-laws varying or modifying his contract, he is not so bound.    (Niblack on Benefit Societies, secs. 27, 136, 137.) There was no agreement that Mr. Kentner's contract might be changed by any future by-law, and the attempted change and the levy of assessment No. 149 were in violation of his rights. The assessment was not enforceable, and Mr. Kentner was not bound to pay it.

The defendant introduced in evidence the opinions of experts, in the form of reports, as to the cost of insurance and recommendations of re-adjustment in the manner of doing business, interlarded with opinions as to equities of the old members, on the ground that they could not get insurance at the present age elsewhere at any cheaper price; but it need scarcely be said that these reports were not admissible in evidence.    If an expert was possessed of any information which defendant desired, he should have been produced as a witness.

The second defense was, that Mr. Kentner was estopped by his conduct to deny the power to make the assessment in question. The ground of the estoppel was, that he had paid all assessments up to No. 149, and that they had been higher than called for by his contract. The estoppel claimed is *in pais* or an equitable estoppel, and it is founded upon the principles of equity and justice.    Its effect is to conclude a party from gainsaying acts and admissions which have influenced the conduct of another, so that it would be a fraud to assert what such previous acts and admissions have denied.    The element of fraud is essential, either in the intention of the party estopped or in the effect of the position which

he attempts to assume. There is not the slightest evidence of any fraudulent intention on the part of Mr. Kentner, nor is there any ground for saying that his conduct induced any other person to change his position. There is no evidence that any one was misled by anything that he did. The company was accumulating a large surplus fund for the benefit of certificate holders, out of which the losses were paid. Assessments were made bi-monthly, and the proceeds were placed in the fund. Mr. Kentner paid all these assessments, but we cannot perceive how any one could have been led by his conduct to suppose that the defendant could have made a change in his contract such as was attempted by assessment No. 149. There was no estoppel. *Farmers' Fire Ins. Co.* v. *Knight*, 162 Ill. 470.

The last defense made at the trial was, that no more than nominal damages can be recovered. It is argued that the proposition submitted on that subject was correct because there was no evidence how much an assessment would have yielded if made. If an assessment was necessary, the defendant had wrongfully refused to make it, and plaintiff was entitled to recover the damages occasioned by such refusal. Defendant had agreed to pay $5000 if an assessment would yield that much, and the fact that there was no evidence an assessment would not yield said sum, or would produce only a nominal amount, justified the refusal of the proposition. The rule is, that in such case, if an assessment would not have realized the amount of the claim it is a matter of defense. The damages are presumed to be the full amount of the certificate in the absence of evidence that they are less, and in such a case the association should be held for the whole amount. (*Union Mutual Accident Ass.* v. *Frohard*, 134 Ill. 228.) In this case, however, the evidence showed a very large surplus on hand, held in trust by the association for all its certificate holders and applicable to the payment of plaintiff's claim. The reserve fund had been

accumulating from the contribution of certificate holders since 1885, and after March 1, 1890, the plan of bi-monthly assessments and the payment of death claims from the fund had been in operation by the consent and acquiescence of all the members. No one had ever objected to that method of making the assessments and payments. Under these circumstances a judgment against the defendant for the amount of the claim was proper.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*