## Cigar Makers' International Union of America v. Louise Huecker.

### Gen. No. 12,102.

1. VOLUNTARY ASSOCIATION—*when defense of immunity from suit incompetent.* Held, that the defendant in this case was estopped from asserting that it was a voluntary association and not subject to suit as if it were a corporation, and likewise that it could not interpose the defense that it was not subject to suit, conjointly with the defense on the merits.

2. INSURANCE BENEFITS—*when recovery may be had under common counts.* Where the obligation of a fraternal organization to pay death benefits has been established by the evidence and nothing remains of the contract which existed between the deceased member and the society but the payment of money, recovery may be had under the common counts.

3. FRATERNAL BENEFIT SOCIETY—*when constitution and by-laws of, may be amended.* Where provision for the payment of death benefits is made by constitution and by-laws adopted after a member has joined an organization, which rules provide for the right of amendment, the right of amendment exists irrespective of the consent of the member or his previous agreement with respect thereto.

4. BENEFICIARIES—*when amendment of constitution as to, not retroactive.* An amendment of the constitution of a fraternal benefit society with respect to who shall be named as beneficiaries, held not retroactive in its operation.

5. AMENDMENT—*when sufficiently appears.* An amendment striking out all plaintiffs but one sufficiently appears where there is an order of record as follows: "All papers and proceedings in the cause" were "amended by discontinuance as to all plaintiffs except Louise Huecker."

6. DEFAULT—*when member of fraternal benefit society not in.* Held, from the particular evidence adduced in this case, that the member

whose death gave rise to the suit, was not in default, and that the society was not entitled to urge a forfeiture.

Action of assumpsit.   Appeal from the Superior Court of Cook County; the Hon. ROBERT W. WRIGHT, Judge, presiding.   Heard in this court at the October term, 1904.   Affirmed.   Opinion filed November 2, 1905. Rehearing denied November 14, 1905.

EUGENE CLIFFORD, for appellant.

G. A. ELLINGSON, for appellee; CLARK VARNUM, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court rendered on the verdict of a jury in an action of assumpsit. The judgment was for $550 against the appellant, defendant below, in favor of the appellee, plaintiff below. It was for the amount of a death benefit claimed by the appellee to be due from the appellant, in accordance with certain of its by-laws, which by-laws she alleged constituted it a fraternal benefit society, and in connection with the membership of her deceased husband in the local Union of the appellant body for more than fifteen years, and his payment of the dues assessed during that time, made a complete liability on its part to pay her as his widow $550 on his death.

The jury found a verdict for $646.54, apparently having added interest to the $550 claimed.   The plaintiff, however, after a motion for a new trial was made, entered a *remittitur*, of $96.54, and the court then denied the motion for a new trial and overruling also a motion in arrest, gave judgment on the verdict for $550.

Several objections are made in the argument of the appellant to this judgment.   The first is that the appellant, the defendant below, The Cigar Makers' International Union of America, is not a corporation, but a purely voluntary association without the capacity to sue or to be sued, and that the court below erred in overruling its demurrer to the plaintiff's substituted declaration (which in

its special count admitted, at least by implication, the voluntary character of the defendant association, although declaring that the defendant was estopped from insisting on it), and also erred in sustaining the demurrer to the defendant's pleas raising the same question. Further, it is urged that irrespective of pleadings, when it appeared by the testimony of one of the defendant's witnesses that the defendant association was not incorporated, the court should have immediately dismissed the suit.

We do not agree with these contentions of the appellant. No error is assigned on the rulings on the demurrers, but even if the action of the court below were properly challenged, we should hold that it was correct. It is not necessary to discuss the question whether the plea of *nul tiel* corporation could properly be pleaded · after the general issue, for we hold that the court below was right in deciding that the defendant association, which was by the process in the cause sued and served as a corporation, and by the declaration alleged to be acting as a corporation, could not come into court by attorney in its association name to defend, and as a part of that defense assert that no such suable entity as itself existed.

The case cited by appellant's counsel from 2 Flippin, does not alter our opinion that the holding of the Superior Court was in accordance with the law of Illinois. Nor is the supposed analogy suggested by defendant of the case of a sovereign non-suable state as a defendant, a true one. The state does not stultify itself by denying its legal existence, when it asserts its exemption from the jurisdiction of its courts. We think, moreover, that as the defendant association was estopped from pleading that it was not an incorporated entity, and the cause was tried upon the general issue filed by it to the plaintiff's declaration, testimony from one of its witnesses to the non-existence of the corporation was neither competent nor material.

The second reason for reversal urged is that the court below allowed the introduction of improper evidence. The particular error insisted on is the admission of a certain

paper (the objection that it was a copy instead of the original being waived) purporting to be the constitution and by-laws of the Cigar Makers' International Union of America, adopted at a convention in Binghampton, New York, in September, 1887.

It is said by appellant that the special count of the substituted declaration on which the case was ultimately tried, as well as the special count of the original declaration filed when the suit was begun, was clearly based on and drawn with sole reference to a subsequently adopted constitution and code of by-laws, called in the argument "The Constitution of 1897," although it seems to have been adopted at a convention of the association at Detroit in September, 1896. It is argued that the constitution of 1888, offered and received in evidence, did not tend to support the allegations of this special count in any particular and should have been excluded. This contention of the appellant finds further expression in an assignment of error, which alleges that the evidence does not accord with the allegations.

Our view of the case is such as to make it useless to discuss the alleged variance between the special counts of the substituted declaration and the proof. We think the recovery could be had and must be considered to have been made under the common counts of the declaration.

Appellant's counsel in argument insist that there is no one of these counts covering the claim and that the action is brought "upon a specialty," which must be specially declared on.

The Supreme Court and this court have held that a policy of insurance must be specially declared on, but this action is not predicated on any policy or certificate of membership making a written and special contract. It depends on the status of the parties to the action, and of the deceased husband of the plaintiff as a member of the defendant association. By virtue of his membership, which was proven as a matter of existing fact, and not by means of any written certificate or contract, and by virtue of the reciprocal rights and obligations of the association and himself involved in

said membership, which were proven by the production of the by-laws or articles of association of the Union and such proof as was offered concerning his payment of his dues and assessments to the association, the plaintiff became entitled, it is claimed, on her husband's death to $550 from the Union. It is not a continuing executory contract of which the plaintiff is seeking the benefit, or complaining of the breach; on the contrary, if the plaintiff's claim is well founded at all, there is nothing left of any contract or agreement except the duty of the defendant to pay the money due. In such a case the plaintiff may declare generally in *indebitatus assumpsit*. The count for money had and received for the use of the plaintiff, and perhaps the count on an account stated, which are both parts of the declaration, would be sufficient as a statement of the cause of action, and the articles of association, by-laws or so-called constitution of the defendant might be properly read in evidence to establish the fact that the duty of the defendant to pay existed, and to determine the proper amount to be recovered. Adlard v. Muldoon, 45 Ill. 193; Sands v. Potter, 165 Ill. 397.

We hold, therefore, that there was no error in the admission in evidence of the "Constitution of 1888."

The third alleged error argued by appellant is the exclusion of proper and competent evidence offered on its behalf. The evidence rejected was "the Constitution of 1897" (so-called), which was offered by the defendant after it had been identified by the president of the Union (who also acts as secretary) as the constitution of the association after it had been amended at a convention at Detroit in 1896.

The ground of its exclusion was stated by the court to be that the amendments of the constitution of 1888, which this document so offered would show, were attempted changes of the material part of a contract which could not be made after August Huecker became a member of the association, so as to affect his rights or the rights of those who were named as beneficiaries of the death benefits on

his decease. The trial judge evidently regarded the case as one like National Council v. Dillon, 108 Ill. App. 183, in which this court held, following Covenant Mutual Life Association v. Kentner, 188 Ill. 431, and Peterson v. Gibson, 191 Ill. 365, that the rights of the beneficiary of the holder of a certificate of membership in a mutual benefit society organized for the purpose of life insurance, could not be affected by a change in the by-laws not assented to by such certificate holder, either by contemporaneous or subsequent action, or by some prior express agreement to be bound by them when made.

We do not agree with the court below in this. Huecker never took any membership certificate or memorandum of a life insurance contract in any form from the defendant corporation. He became a member of it in 1885. What its "constitution" or by-laws or articles of association may then have been, does not appear in the record. Presumably it had some. It was not, however, organized, as appears plainly from the constitution of 1888, as a life insurance society, but as a labor union, and it is entirely possible that in no "constitution" before that of 1888, so-called, adopted at the Binghampton convention, was there any provision for death benefits to its members. If there were, it seems strange that the production of the articles in force in 1885, when Huecker became a member, was not demanded by the plaintiff. The record shows, on the contrary, that the demand of the plaintiff was for the constitution and by-laws which were adopted at Binghampton and went into force January 1, 1888, and that nothing earlier was mentioned.

As the record stands, therefore, the plaintiff sued for the death benefit to which she became entitled because of an adoption of a set of rules by the association of which her husband was a member some years after he became a member. That set of rules so adopted provided for its own amendment and alteration, and power in the society to change these rules might well be presumed even without such provisions. Under these circumstances we think the

amendments to the constitution, so far as they affected the status or claims of the parties to this controversy, or those of August Huecker, were relevant evidence and should have been admitted. But it does not necessarily follow that because there was error in their exclusion, there should be a reversal of the judgment. In order to render the error thus fatal, it must be injurious to the defeated party.

This test is impliedly accepted by the appellant, who insists that there were in the constitution of 1897 two material amendments to that of 1888, which amendments, if admitted in evidence, not only might, but must have defeated the plaintiff's case.

The first is that the beneficiaries entitled to $550 on the death of a fifteen year member, who were in the constitution of 1888 "his wife, nearest kin, or legatee" (under which provision plaintiff claims), was changed by the constitution of 1897 to "his heirs at law."

The provision which was adopted in the constitution of 1897 was in full as follows:

"When becoming a member of the Union each member shall designate the person to whom the aforesaid beneficiary money shall be paid, or he may name as such person his heirs, or he may name as such beneficiary his legatees. If he shall fail to make any such designation, or if no claim in writing, duly verified by the claimant, to such beneficiary money is made by any of the above mentioned or their heirs or legal representatives within one year after the death of the member, all claims therefor shall lapse and end, and said beneficiary money shall revert to the Union. The member may change his beneficiary at any time by notice in writing to the Secretary of the local Union. For this purpose blanks shall be furnished by the international president. But in case any member shall fail to so designate by will or otherwise to whom said sum shall be paid, the sums above mentioned shall be paid to the heirs at law."

We have carefully considered this amendment as a whole, and have arrived at the conclusion that it should not be given a retrospective effect or held to apply to any person

not "becoming a member of the Union" after the date of its adoption. Our view, therefore, is not that the Union did not have power to change the beneficiaries of its already existing members, but that it did not do so or attempt to do so, but provided only for further accessions, who were to be invited, but not forced on joining, to name their beneficiary within the limits prescribed.

While not, perhaps, entirely free from doubt, this construction of the amendment seems to us the correct one. Assuming it to be so, it follows that this amendment became immaterial in the present case, and that although relevant, its exclusion was not an injurious error.

In connection with this it may be noted that appellant contends that the declaration on which the case went to the jury, which was originally drafted, making several persons plaintiff who were alleged to be the heirs at law of August Huecker, was never amended so as to make the appellant sole plaintiff. This is a misconception of the record. There was not only leave to amend asked and granted, but by an order of court of February 29, 1904, "all papers and proceedings in the cause" were "amended by discontinuing as to all plaintiffs except Louise Huecker." This was certainly sufficient to effect the amendment. Louise Huecker was by the evidence shown to be the widow of August Huecker.

The second material amendment of the constitution, it is claimed by the appellant, was one which changed this provision in the constitution of 1888:

"Any member of any union who shall fail to pay the dues and assessments, local and international, as provided by law for a term of eight weeks shall be suspended from the Union. This shall not apply to members out of employment," to this in the constitution of 1897:

"Any member of any union who shall fail to pay the dues and assessments, local and international, for a term of eight weeks stands suspended from the Union. This shall not apply to members out of employment who are not drawing benefits of any kind, who shall be allowed sixteen weeks."

There is some uncertainty in the record whether or not this amendment was excluded from the jury, in whose presence it was read. But we will assume that it was so excluded when the amended constitution, as a whole, was ruled out.

Appellant claims that, while the constitution of 1888 in its rule concerning suspension only provided that by action of the body a person in a certain default might be suspended from membership, and his beneficiary consequently lose any claim to death benefit, the constitution of 1897 was in that regard self-executing.

We do not think it necessary to decide whether or not this is true, for if it be conceded, for the purposes of this case, nevertheless appellant, to show that the exclusion of the amendment was injurious to him, must point out evidence admitted or at least offered, tending to establish the default of August Huecker for the requisite time, resulting in his "standing suspended." This, we have no hesitation in saying, appellant did not do.

M. F. Lentz, the secretary of the local Union, as a witness for defendant, produced a ledger in which he says entries are made at his office and under his supervision, but not all by him, in which is a page apparently devoted to August Huecker's account since January 13, 1900. His account before that time, which was highly important, in view of what this page discloses, if it may be said to disclose anything, does not appear.

If, however, it should be assumed that up to January 13, 1900, Huecker's account was settled, and that the page correctly states it from that time on until his death, it would appear that there was never "a term of eight weeks" in which Huecker "failed to pay the dues and assessments, local and international," which is the language of the amended section.

By computation it might be calculated that at his death on July 15, 1900, there was due from him to the association an amount greater than the sum of eight weeks' dues and assessments; but in construing a clause producing an

absolute forfeiture of fifteen years' savings and payments, this is not the way to proceed.

If the account shown by this ledger page is to be considered as beginning on January 13, 1900, a term of eight weeks would not expire until March 10, 1900, and on March 5th Huecker made a payment which was received, and thereafter there was never a period of four weeks, even up to his death, when he did not pay amounts which were received on account of his dues.

Even if the account is supposed to include the week ending on January 13, 1900, and to show that Huecker had been on March 5, 1900, in default for "a term of eight weeks," it would not establish the appellant's contention that he stood suspended on July 15, 1900. He began paying again on March 5th, two days after the eight weeks expired, and continued to pay on account of his indebtedness up to about two weeks before his death. These payments were all received and credited, and practically took care of all the current dues and assessments. It would be strange if a man who had for fifteen years and over made weekly payments under promises of a death benefit for his wife or family at his death, should be considered at his death to have forfeited his membership by neglect at some period in the past to pay for eight weeks, when the association had for months after such neglect, and up to the time of his death, been assessing him and taking his money as though no such default had occurred. It does not even appear in the record that between January 13, 1900, and July 15, 1900, August Huecker was not out of employment. Of course, the unexplained entry of "suspended July, 1900," evidently written after July 28, 1900, is of no significance whatever.

As we think it plain that there was no evidence of any default as would, even if the constitution of 1897 be self-executing, have resulted in a lapse or forfeiture, it follows that we deem the exclusion of this amendment immaterial and harmless to the appellant.

Our views, as above indicated, also dispose of the fourth

contention of the appellant, that the verdict was against
the weight of the evidence.  We think justice has been done
by the judgment.  It will be affirmed.

*Affirmed.*