Hicks v. Association.

NANNIE A. HICKS, Administratrix, *v.* NORTHWESTERN AID ASSOCIATION et al.

*(Knoxville.* September Term, 1906.)

1. **LIFE INSURANCE.** Increased rates in assessment company must be in accordance with the terms of policy, when.

    Where a life policy in an assessment company provides that while the rate therein specified as the maximum is not a fixed premium, it is expressed as a belief that such rate will never be exceeded, and that, if any unexpected emergency should arise whereby the mortuary and reserve funds should become exhausted, then, and in such case only, it is agreed that the policy holder shall be liable for such further assessment as may be necessary to meet such emergency and maintain the solvency of the company, it is held that the company has no power under the contract, nor under the law, to increase the said maximum rate, except in case of the emergency specified and in accordance with the terms of the contract. *(Post,* pp. 210-212, 214-217.)

2. **SAME.** Same. Policy is not forfeited by nonpayment of illegally increased premiums, but is collectible, less credits for unpaid lawful premiums.

    Where the premium rates on a life policy in an assessment company are illegally increased, the insured is not bound' to-pay them to prevent a forfeiture, and on the falling in of the policy by death, it was matured into a claim against the company for its full face value, less the amount of the premiums unpaid at the lawful or contract rate. *(Post, p.* 212.)

    Case cited and approved: Association v. Kentner, 188 Ill., 431.

3. **SAME.** Burden on company to show an unexpected emergency authorizing an increase of premium rates, when.

    Where an assessment life insurance company increased the premium rates on a life policy providing that the rates should not

be increased except upon the exhaustion of the mortuary and reserve funds, an unexpected emergency, the burden of proof rests upon the company to show the happening of the unexpected emergency. (*Post, pp.* 210, 211, 212-214.)

Case cited and approved:  United States v. Railroad, 191 U. S., 84.

Case cited and distinguished:  Knights of Pythias v. Knights (Ind.), 20 N. E., 479, 3 L. R. A., 409.

4.  **SAME.**  Tender according to contract rate is unnecessary, where an illegally increased rate is insisted on.
Where an assessment life insurance company wholly changed its plan of business, and illegally increased its premium rates on existing policies, in accordance with the new plan, and insisted on the payment of the illegally increased rates by an old member, who was willing to pay the contract rate, a tender of the premiums according to such contract rate was unnecessary as a useless and vain thing. (*Post, pp.* 217-221.)

Cases cited and approved:  Guetzkow v. Insurance Co., 105 Wis., 448; Shaw v. Insurance Co., 69 N. Y., 286; Hayner v. Insurance Co., 69 N. Y., 435; Dennison v. Association, 69 N. Y. S., 291, 59 App. Div., 294; Insurance Co. v. Insurance Co., 86 Pa., 236; Insurance Co. v. Society, 181 Pa., 448; Benjamin v. Association (Cal.), 79 Pac., 517; Heinlein v. Insurance Co. (Mich.), 59 N. W., 615, 25 L. R. A., 627, 45 Am. St. Rep., 409; Legion of Honor v. Orcutt, 119 Fed., 682, 56 C. C. A., 294; Wagoner v. Knights and Ladies of Honor (Mich.), 87 N. W., 903; Lavin v. Lodge (Mo. App.), 86 S. W., 600.

5.  **SAME.**  Tender is unnecessary where an assessment is not made, when.
Where an assessment of premium is not made by an assessment life insurance company, a collection of premiums cannot be made, and a tender thereof is unnecessary. (*Post, p.* 221.)

Hicks v. Association.

Cases cited and approved:   Stewart v. Grand Lodge, 100 Tenn., 267; Insurance Co. v. Hyde, 101 Tenn., 396.

6. **SAME.** Company cannot change contract rate of premium, without consent of insured, to facilitate reorganization, when.

Where an assessment life insurance company issued a policy providing that the premium rates should not be increased except upon the exhaustion of the mortuary and reserve funds, an unexpected emergency, such company has no right to change the contract with the insured without his consent, merely to facilitate the reorganization of its business upon a more satisfactory basis. (*Post, pp.* 210, 221, 222.)

Cases cited and approved:   Gaut v. Legion of Honor, 107 Tenn., 603; Hadly v. Queen City Camp, etc., 1 Tenn. Chy. App., 413, and cases cited in the opinion, on pages 221, 222.

7. **SAME.** Recovery for full amount of policy payable out of one assessment on members in the absence of evidence as to what assessment would produce.

Where a life policy in an assessment company for a specified sum entitles the beneficiary to be paid out of one assessment levied on the members and in an action thereon there was no evidence showing what amount an assessment would produce, the plaintiff, otherwise entitled to recover, is entitled to recover a judgment for the full amount of the policy, less premiums unpaid at contract rate, with interest from the filing of the bill. (*Post, pp.* 222, 223.)

Case cited and approved:   Association v. Kentner, 188 Ill., 431.

Cases cited as to diversity of opinion:   Strauss v. Association, (N. C.), 39 S. E., 55, 54 L. R. A., 605, 83 Am. St., Rep., 699; Insurance Co. v. Garmany, 74 Ga., 51; Barney v. Dudley, 42 Kan., 212; Spear v. Insurance Co., 36 Hun, 322; Insurance Co. v. Robinson (C. C.), 54 Fed., 580; Insurance Co. v. Weck, 9 Ill. App., 358.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —T. M. McConnell, Chancellor.

Burkett, Miller & Mansfield, for complainant.

Cooke, Swaney & Cooke, for defendants.

Mr. Justice Neil delivered the opinion of the Court.

This was an action brought to recover upon a policy of insurance for $1,000, payable originally to Mrs. Nannie A. Hicks, but subsequently changed in accordance with its terms, so as to be made payable to the estate of the insured, Milton B. Hicks. There was a recovery in favor of the estate in the chancery court, but on appeal this judgment was reversed by the court of chancery appeals.

The facts, so far as necessary to be stated, are that the policy was issued on the 18th day of July, 1892, and premiums were continuously paid by the insured up to January 18, 1903, in quarterly payments of $3.47 each, the last payment being made in October, 1902, which carried the policy forward for the next quarter, which expired on January 18, 1903; but during this time,

that is, about the time the last payment was made, the insurance company raised the rate from $3.47 a quarter to $4.86, that is, from the total amount for the year of $13.88 to $19.44. This increase was made without the consent of the insured, and he thereafter made no other payments, and died on the 21st of October, 1903.

The insured died suddenly, and his papers were left in considerable confusion; but from these and from other sources the following additional facts were gleaned:

When the fact that the rate had been increased was brought to the attention of the insured and of other policy holders in Dayton, Tennessee, where all of them resided, all of them expressed dissatisfaction with the change, and all said they would not pay this increased rate, except Hicks. He expressed dissatisfaction with it, but said in the conference referred to that he did not wish to lose his insurance, and expected to pay it. However, he did not pay it, and the association claimed that the policy was forfeited by reason of such failure to pay. The policy contained the following provision:

"Notice of the amount of each quarterly payment and the time it is due will be sent to the insured thirty days before such payment is due, unless the insured has deposited for the year or half year in advance on account. Printed or written notice mailed to the address of the policy holder as it appears on the books of the association at that date shall be deemed due and sufficient notice. The policy holder must notify the association at

once of any change in residence, post office address, occupation, or name."

It does not appear that the association, after the new rate had once been called to the attention of the insured, ever notified him again of any assessment upon either the old or new rate, pursuant to the foregoing provision or otherwise, save in the following manner: Prior to October 9, 1903, how long prior does not appear, the association mailed to Mr. Hicks, who had been defendant's agent at Dayton, Tennessee, a number of blank receipts applicable to the policies of the various policy holders in Dayton, including Hicks, with a view to having the premiums paid on the new rate. The receipts exhibited the amount of premium covered by each policy according to both the old and the new rate, and stated that the premium called for in each was due October 18, 1903. The policy contained a provision that payment was to be made "in advance, for a quarter, half year, or year, at the option of the insured." The receipt contained no reference to the period between October 18, 1902, and October 18, 1903 (during which Hicks had made only the payment of one quarter, $3.47, at the old rate, and which, as already stated, carried the policy to January 18, 1903), except such as may be inferred from the following clause therein appearing, viz.: "The acceptance of the foregoing premium shall not be held to waive any forfeiture caused by nonpayment of this or any previous sum when due, or otherwise."

Hicks, being confused by the appearance of both the

old rate and the new in this receipt, addressed a letter to the association on October 9, 1903, making sundry inquiries concerning the status of his own and other policies.    The letter was:

"I am in receipt of several receipts for policy holders at this place and beg leave to inquire as to the present *status* of these policy holders.    For example, take my own case.    My receipt called for $13.88, which is four quarterly premiums under the old rate.    Now, if I pay this $13.88, am I fully reinstated in the company, and failure to pay quarterly premiums when due waived?    If it puts me in good standing and a policy holder, what is the value of my policy as an asset in my estate in case I should die?    What would be the result of continuing to pay the old rate in accordance with the terms of the contract as originally issued to me?    What would be the result if I pay the $13.88 on the 18th inst., the time due, and after that pay the new rate of $19.44, and what would be the quarterly rate of that date?    If the payment of this $13.88 on the 18th inst. reinstates me, it is my intention to pay it, but I should like full information as to the above for guidance as to course I shall follow in the future, whether to continue at the old rate or pay the new one, which I understand we have the option of doing.    I cannot say as to the other policy holders, but your letter to me will probably determine them as to what course they will pursue."

Mr. Hicks died before the reply to his letter was

117 Tenn—14

mailed; but, in ignorance of his death, the association addressed to him a letter on October 23d, which exhibited their own view of the meaning of the demand made in the receipt; that is, that the increased rate must be paid.

The clause of the policy under which it is claimed the change was made from the lower to the higher rate was as follows:

"This association qualified under the so-called 'assessment laws' under which it is not obliged to tax its policy holders to maintain the legal reserve of level premium or old line companies. The maximum quarterly, semi-annual or annual payments to be made on account of this policy are set opposite the age of insured in the table of rates indorsed hereon. The amount named in such table of rates, and spoken of as the maximum payment, is not in any sense a fixed or artificial premium. The past experience of this company and the American Tables of Mortality indicate, as we believe, with absolute certainty, that the rate spoken of as the maximum will never be exceeded. If, however, any unexpected emergency should arise whereby the mortuary and reserve funds should become exhausted, then, and in such case only, it is agreed that the policy holder shall be liable for such further assessment as may be necessary to meet such emergency and maintain the solvency of the company."

There was no evidence introduced, and the court of chancery appeals did not find as a fact that any unexpected emergency had arisen whereby the mortuary and

reserve funds had become exhausted, and that any further assessments were necessary to meet such emergency and maintain the solvency of the company. The substance of the finding of the court of chancery appeals upon this subject is that there was no evidence that such emergency had not arisen.

After the policy was issued, the company changed its name from that under which the policy was issued to the Northwestern National Life Association; but it is admitted in the pleadings that the corporation is in effect the same. As originally constituted, the company that issued the policy was an assessment concern; but under its new name it became a level rate premium company and formulated several plans whereby its policy holders might take advantage of the new plan, one of which was the increase of premiums.

The defense of the company is, in effect, that the policy sued on had been forfeited by failure to pay the premiums that accrued subsequent to the payment which was made in October, 1902.

The face of the policy shows that the insured was, at the time it was issued, 27 years of age, and a table upon the back of the policy shows that the maximum rate at this age was $3.47 per quarter, and the facts found show that he had been paying this maximum all the time up to and including the last payment made by him in October, 1902. There are numerous other facts found by the court of chancery appeals bearing upon various phases of the case, that is, as applicable to various

grounds of relief claimed in the original and amended bill; but the foregoing statement contains all that is material in respect of the crucial point in the case, the one upon which we think the true liability rests.

We think it perfectly clear that the defendant company had no power under the contract, or under the law, to increase the rate of Mr. Hicks' insurance, except in accordance with the terms of the contract; that, in case the premiums or quarterly payments were illegally increased, the insured was not bound to pay them; and that, upon the falling in of the policy by his death, while he was in arrears under such a state of facts, the policy did not stand forfeited, but was matured into a claim against the company for its full face value, less the amount of the premiums unpaid at the lawful or contract rate. *Covenant Mut. L. Ass'n of Illinois* v. *Kentner*, 188 Ill., 431, 58 N. E., 966.

The contract contained the provision that the rate should not be increased, except upon the happening of the unexpected emergency referred to in the foregoing quotation from the policy. The burden of proof was upon the defendant to show that such emergency had arisen. This is a sound view, not only by clear implication from the terms of the passage quoted, which made the right to call for increased assessments dependent upon the existence of an exceptional status that might thereafter arise, but also because the facts were peculiarly within the knowledge of the company, and the policy holder could not be supposed to know anything of them.

*United States* v. *Denver & R. G. R. Co.,* 191 U. S., 84, 24 Sup. Ct., 33, 48 L. Ed., 106. The rule laid down in the contract was payment at the rate not exceeding the maximum named in the table indorsed. If the company claimed a right dependent upon the existence of an exceptional status, one outside the rule, it was no more than just that it should show that such *status* had become a reality. This it could prove with the greatest ease, if the fact existed, being peculiarly within its own knowledge. The negative could be proven by the complainant only with the greatest difficulty, if at all. *United States* v. *Denver, etc., R. Co.,* supra.

The court of chancery appeals seems to have been of the opinion that the court should presume that the assessment was lawfully made, but manifestly such a presumption would deprive complainant of his rights under the contract, since it would wholly emasculate the term which he had provided for his protection, substituting an inference drawn from the performance of the forbidden act as a support for the act itself, in lieu of proof of a state of facts which would justify the performance of the act, such act being unlawful but for the existence of some exceptional state of facts. For example, we may suppose a given act unlawful under all circumstances but one. The doing of such an act would be *prima facie* unlawful. One claiming under such an act and asserting its lawfulness would have imposed upon him the duty of showing that the special fact was in existence which made it lawful. To infer lawfulness from the

mere doing of the act would negative the existence of the rule, and destroy it.

In the brief of defendant's counsel, we are referred to *Supreme Lodge Knights of Pythias* v. *Knights* (Ind.), 20 N. E., 479, 3 L. R. A., 409, as a case in point. This case does not apply. The matter there complained of by the party suing was, in substance, this: The insurance department of this organization had a division, called the "second class," composed of about sixteen thousand people. From time to time an assessment was made to pay death losses on the whole of this membership, at the rate of $1 each, and out of the fund so realized the amount of the certificate, $2,000, was paid to the beneficiary, and the rest of the fund, it is presumed, kept to meet future death losses. Subsequently, a new class, called the "fourth class," was organized, into which all of the insured members of the organization were allowed to enter upon complying with the prerequisites for the constitution of the class. In this class the system of insurance was changed from the plan of arbitrary assessments of the same amount for each member to an assessment graduated according to the age of the member. It was contended by the plaintiff in the case referred to that the organization of the "fourth class" within the body of the general insurance organization had the effect of depleting the second class to such an extent as to almost annihilate it, since nearly all of the insured members went into the new "fourth class," and this was true. It was further contended that this change

was a violation of the contract rights of the few persons who remained in the "second class," since an assessment upon the members of that class at the old rate would not produce anything like the sum of $2,000 which was called for by their certificates. But it appeared that the "constitution" and by-laws of the order contained a reservation of the right and power to change or amend the "constitution" and by-laws, and that the change referred to was regularly made by the duly constituted authorities of the organization.

Responding to the contentions above referred to, the court said: "It was not the destruction of a vested right, because the power to amend was, as reserved, a part of the contract from which the right of the beneficiary emanated." Another reason was also given, to the effect that the right to enter the new class was open to all members on equal terms. However, the first answer was in itself a sufficient one. In the case now before the court it does not appear that there was any such reservation. There was, indeed, a reservation in the face of the policy to make new by-laws and regulations; but these were to be of such a character as that they should not be "in conflict with the contract rights of the insured." The exact language of the clause, appearing upon the face of the policy, is: "In accepting this contract, the insured and the beneficiary herein agree to be bound by the by-laws and regulations of this association now in force or which may hereafter be adopted,

not in conflict with the contract rights of the insured herein."

In *Covenant Mut. Life Ass'n* v. *Kentner,* supra, it was held that, where a certificate issued to plaintiff's husband under which his life was insured in the defendant, an assessment life insurance company, contained no agreement that future changes in defendant's by-laws should affect his contract, the fact that the insured was chargeable with knowledge of the by-laws existing when his certificate was issued, and that they contained a provision that they might be altered, did not authorize defendant, under a change of by-laws, to increase the cost of carrying the insurance beyond the original terms of the contract.

In that case it appeared that a certificate was issued to the plaintiff's husband by which it was agreed to pay to the plaintiff on her husband's death the amount, not over $5,000, of an assessment which it would make on all its members, on condition that the insured would pay on the death of each member a mortuary assessment not to exceed $1, and expenses not to exceed thirty cents a month. The insured paid all of the assessments up to No. 149, levied March 1, 1899, which he refused to pay, and died April 23, 1899. Assessment No. 149 was levied on a new basis and was largely in excess of what assured agreed to pay. Upon these facts it was held that the fact that the rate agreed on with insured would not meet the cost of insuring him did not authorize defendant to increase its assessment beyond the contract rate in order

to meet such cost, and hence that the refusal by insured to pay assessment No. 149 was justified, and did not authorize defendant to forfeit his rights under the certificate.

We have considered the question whether it was incumbent upon the insured, in order to preserve his rights under this policy, to tender the premium due at the contract rate, from quarter to quarter.

In *Guetzkow* v. *Insurance Co.*, 105 Wis., 448, 81 N. W., 652, it is said: "The rule of law is maintained with great unanimity that one party cannot predicate a forfeiture, upon an omission by the other which his own conduct has helped to bring about; that the declaration that a policy of insurance is clearly forfeited will constitute a sufficient justification for the omission to tender subsequently accruing premiums or installments, upon the ground that the assured is justified in believing that no tender would be accepted, and the formality is therefore unnecessary; that the law will not require the doing of a vain thing. 2 Joyce on Insurance, sec. 1123; *Shaw* v. *Republic L. Ins. Co.*, 69 N. Y., 286; *Girard L. Ins. Co.* v. *Mutual L. Ins. Co.*, 86 Pa., 236; *National Mut. Ins. Co.* v. *Home Benefit Soc.*, 181 Pa., 448, 37 Atl., 519, 59 Am. St. Rep., 666."

In *Benjamin* v. *Mutual Res. Fund Ass'n* (Cal.), 79 Pac., 517, a very recent case decided in 1905, it was held that a certificate holder in an assessment insurance association, of whom an illegal assessment was demanded, need not pay such assessment, nor tender a sum equiva-

lent to a legal assessment, in order to preserve his rights under his contract; nor need he, on demand by the association, furnish it with his reasons for not paying the assessment. To same effect, in substance, as to the absence of a necessity for tender, is the case of *Heinlein* v. *Ins. Co.* (Mich.), 59 N. W., 615, 25 L. R. A., 627, 632, 45 Am. St. Rep., 409, and *Hayner* v. *Am. Pop. L. Ins. Co.*, 69 N. Y., 435.

In *Supreme Council American Legion of Honor* v. *Orcutt*, 119 Fed., 682, 56 C. C. A., 294, the facts, so far as they bear upon the question before us, were these:

Upon the trial it appeared that the assessment for the month of July, 1897, was, by the rules of the association, required to be paid before the end of the month; that the assured paid it to one Daoust, the cashier of a bank at Defiance, Ohio, on or about the 20th of July, 1897, but that Daoust did not forward it to the collector of Alpha Council No. 1 to whom he should have forwarded it, until the 5th of August following; that the collector was required to make his returns to the supreme treasurer for the month of July on August 12th; that he reported the July assessment of Orcutt as not having been paid until August; that Orcutt was thereupon suspended, and the check was returned to Daoust; that he made application for reinstatement on August 23, 1897; that his case was referred to the medical examiner, who reported his physical condition not acceptable, and thereupon the petition for reinstatement was disallowed; that Orcutt was, at the time of his suspension, in failing health;

and that he died in September of the following year. There was testimony from which the court concluded that Daoust was the agent of the association.

For the association it was urged:

"(1)   That Orcutt was not a member in good standing at the time of his death.   But if the facts be" said the court, "as the jury found, that he was suspended without cause, it was not competent for the defendant to put its own wrongful action forward as a defense. . . ."

"(2)   .   .   .   That the insured did not tender subsequent dues and assessments, or claim the privileges of a member, is of no moment.  He had no notice of any such levies, and it would have been a vain thing for him to make such tender or claim his privileges.   Nor did his claim to be reinstated constitute a waiver of his rights.   That was an obvious and proper way to have the wrong undone.   The defendant's refusal was a repetition of the wrong.   The association was in no wise prejudiced by these proceedings, and is in no position to claim that the plaintiff surrendered a valuable right."

To the same effect is *Wagoner* v. *Supreme Lodge Knights & Ladies of Honor* (Mich.), 87 N. W., 903.   In that case, it appeared that a previous assessment had been refused, on the ground that Mrs. Wagoner was not a member of the association.   Upon the point whether Mrs. Wagoner should have continued to make tender of subsequent assessments in order to keep her policy good, the court said: "The law does not require useless things to be done.   It was useless to tender a second assess-

ment when the previous one had been refused on the ground that Mrs. Wagoner was not a member." So, in *Dennison* v. *Masons' Fraternal Acc. Ass'n of America,* 69 N. Y. S., 291, 59 App. Div., 294, it was held that, where timely tender of premium on an accident policy was made and rejected, and a wrongful declaration of forfeiture of the policy made, the insured need not thereafter keep the tender good to entitle him to sue on the policy.

There is a recent case, *Lavin* v. *Grand Lodge A. O. U. W.* (Mo. App.), 86 S. W., 600, which fully recognizes the rule supported by the preceding cases, but takes a distinction to the effect that subsequent tender should be made when there is a probability that the refusal of a previous premium may have been the result of mistake, and when ample means are afforded by the society for the ascertainment and rectification of the wrong and the reinstatement of the member. In such case it is said that a tender is not a vain and useless thing.

But, in the case now before the court, it is clear that no subsequent tender of the old rate would have availed. The association had wholly changed its plan of business, and the new rates were based upon that new plan. The last communication from it upon the subject in response to an appeal for an explanation, and a suggestion that the member was willing to pay the old rate was an insistence upon the payment of the new. Moreover, as above shown by a quotation from the policy, it was the duty of the association to give thirty days' notice in

advance of such assessment, and it does not appear that any such notice was given of any assessment at the old rate; but, from the sending of the blank receipt above referred to, it seems that a demand was made for payment on the new rate. Here was a continuation of the attitude of the association in opposition to the old rate. Can it be supposed that under such a state of facts a tender of the old rate would have been of any avail? Clearly not. It does not even appear that an assessment was ever made upon the old rate after the association went upon its new plan, and such assessment was, of course, necessary before any collection on that basis could be made. *Stewart* v. *Grand Lodge,* 100 Tenn., 267, 46 S. W., 579; *Insurance Co.* v. *Hyde,* 101 Tenn., 396, 48 S. W., 968. Here was another and continuing evidence to the assured that no payment at the old rate would be received, and that a tender would have been a vain thing. We conclude that the assured was under no obligation to make the tenders referred to.

That the defendant had no right to change its contract with the insured without his consent, merely to facilitate the reorganization of its business upon a more satisfactory basis, is a proposition abundantly supported by the following authorities: *Gaut* v. *Am. Legion of Honor,* 107 Tenn., 603, 64 S. W., 1070, 55 L. R. A., 465; *Hadly* v. *Queen City Comp.,* 1 Tenn. Ch. App., 413; *Strauss* v. *Mut. Reserve Fund L. Ass'n* (N. C.), 39 S. E., 55, 54 L. R. A., 605, 83 Am. St. Rep., 699; *Bragaw* v. *Sup. Lodge Knights & Ladies of Honor* (N. C.), 38 S. E., 905,

54 L. R. A., 602; *Peterson* v. *Gibson* (Ill.), 61 N. E.,
127, 54 L. R. A., 836, 85 Am. St. Rep., 263; *Thibert* v.
*Sup. Lodge Knights of Honor* (Minn.), 81 N. W., 220,
47 L. R. A., 136, 79 Am. St. Rep., 412; *Covenant Mut.
L. Ins. Ass'n* v. *Kentner,* supra.

There is a diversity of opinion as to the measure of
damages applicable in such a case, where the insured
sues in his lifetime for breach of the contract (*Strauss*
v. *Mut. Res. F. L. Ass'n,* supra; *Insurance Co.* v. *Gar-
many,* 74 Ga., 51; *Barney* v. *Dudley,* 42 Kan., 212, 21
Pac., 1079, 16 Am. St. Rep., 476; *Speer* v. *Insurance Co.,*
36 Hun, 322; and see *Insurance Co.* v. *Robison* (C. C.),
54 Fed., 580; *Insurance Co.* v. *Weck,* 9 Ill. App., 358);
but it was held, and we think correctly, in *Covenant Mut.
L. Ins. Co.* v. *Kentner,* supra, that, in a suit by a bene-
ficiary of the policy after the death of the assured, when
there was no evidence as to what an assessment would
produce, and plaintiff was otherwise entitled to recover,
a judgment for the full amount of the certificate would
be proper.   It was further held in that case that the
fact that an assessment would have produced less than
the face of the certificate, if true, would be a mere mat-
ter of defense which would have to be shown by the as-
sociation.

We think the complainant in the present case is en-
titled to a decree for the full amount of the policy, less
the premiums unpaid at the contract rate maturing be-
tween October, 1902, and October, 1903, with interest

from the filing of the bill. The decree of the court of chancery appeals is therefore reversed.

We are unable to see any just ground for the allowance of a credit of $108.96, shown by the chancellor's decree. This credit will therefore be disallowed, and a decree entered as above directed. The defendant will pay all of the costs of the cause.