(No. 26618.—

BERNARD FICHTER, Appellant, *vs.* MILK WAGON DRIVERS' UNION, LOCAL 753, *et al.*, Appellees.

*Opinion filed January 19, 1943—Rehearing denied March 9, 1943.*

RUSSELL J. TOPPER, and FRIEDMAN, HUTLER & TOPPER, for appellant.

DAVID A. RISKIND, ABRAHAM W. BRUSSELL, and WALKER BUTLER, (ABRAHAM MILLER, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Bernard Fichter, plaintiff-appellant, filed in the circuit court of Cook county a suit against Milk Wagon Drivers' Union, Local 753, *et al.,* to recover the sum of $3193, claimed to be due as sick benefits under the bylaws of that union. Trial was had before a jury, which returned a verdict against him, and on appeal to the Appellate Court for the First District the judgment of the circuit court was affirmed.

The facts are substantially as follows: Fichter became a member of the Milk Wagon Drivers' Union in 1920, and June 15, 1928, sustained a permanent injury as the result of an accident while driving a milk wagon. During all of this time he was paying monthly to the union, benefit dues in addition to the regular union dues, as provided by the bylaws. At the time of such disability the bylaws of the union, adopted in 1922, provided sick benefits of $20 per week for each member in good standing, and $2 per week extra for a wife, and the same for each child under the age of sixteen years. The bylaws in force at the time of the injury read: "A sick benefit shall be paid to members in good standing of twenty dollars ($20.00) per week. * * * As soon as 90 days of benefit has been paid a member, if he is still sick his dues stop and he draws two ($2.00) dollars per week extra for his wife and each child under 16 years."

Appellant, as a result of his injuries, became afflicted with chronic thrombophlebitis of both legs, which means the destruction of the deep-seated veins; his legs were ulcerated, swollen, discolored and hardened. He had been treated for eight years by physicians of the union and many other doctors. He spent two and one half years under care of the General Electric Company clinic, and after 1935 spent two years in the Cook County Hospital, and still is in a chronic and continuous state of ill health. No evidence

was offered by defendant disputing this condition, or that it still exists, but on the contrary, it continued to pay sick benefits under the 1922 bylaws from June, 1928, until January, 1936, without objection. There is no doubt plaintiff was sick, and the payments by appellee so admit, and appellant came clearly within the definition of sickness under said bylaws.

In December, 1935, the union local amended its bylaws as to sick benefits, by which payments to a wife and minor children were omitted, and benefits of $20 per week were authorized, with a maximum of twelve weeks benefit to a member having a membership of one year, and twelve additional weekly benefits for each additional year of continuous service up to and including the tenth year. After ten years of continuous employment in good standing, members were entitled to benefit for full time of sickness. Prior to this amendment plaintiff had been paid each week benefits ranging from $26 to $35, depending upon the number of his family coming within the provisions of the bylaws. Section 74 of the constitution and bylaws of 1922 of said union authorizes amendment of the bylaws and gives the procedure for so doing.

When the amendment of December, 1935, became effective the defendant notified plaintiff they would "carry" him for ninety-two weeks at $20 per week instead of what he had been receiving, and that after that time he would be done. Plaintiff made no reply to this notice, but accepted it and cashed checks for $20 for the period of ninety-two weeks. Shortly after he had received the ninety-second payment he filed his suit alleging he was entitled to receive the payment of $26 per week under the bylaws of 1922, and that the amendment of 1935 was not binding upon him. At the time of the last payment plaintiff was handed a withdrawal card from the union, and retained the same until the time of the trial, and offered it in evidence.

The record presents these principal questions: (1) Could the amended bylaws be applied to the claim of the plaintiff, which had accrued and was being paid at the time the amendment was made? (2) Is the plaintiff barred from bringing this suit because of an implied contract upon his part to conform to the 1935 bylaws, or because of ratification, or an accord and satisfaction?

Upon the first question it would appear upon principle that where a member had made his monthly benefit payments in accordance with the bylaws and became sick and entitled to a benefit, which was being paid, it would not be reasonable or just to allow payments to be avoided by the adoption of a bylaw discharging the debtor from liability. No authorities directly in point from this State have been cited, but such appears to be the rule in other jurisdictions. *Becker* v. *Berlin Beneficial Society,* 144 Pa. 232; *Maheu* v. *L'Union Lafayette,* 98 Atl. (Me.) 821; *Crnic* v. *Croatian Fraternal Union of America,* 89 S. W. (2d) (Mo.) 683; *Dotlich* v. *Slovene National Benefit Society,* 228 N. W. (Minn.) 608.

In *Becker* v. *Berlin Beneficial Society, supra,* which presented exactly the same question as here, the court said: "Some time after the defendant society became liable to the plaintiff for dues at the rate of two dollars and fifty cents per week, and after it had paid them for more than one year, it proceeded to amend its bylaws so as to reduce the amounts of the benefits. This was certainly an easy mode of relieving the society from an obligation, and if successful, will doubtless be followed by other similar associations. The difficulty in the way of this convenient mode of paying debts is that it is repudiation pure and simple. The argument that the plaintiff, being a member of the society, is bound by the bylaw, does not meet the difficulty. It may be a good bylaw as to future cases, but at the time it was passed the plaintiff was something more than a

member. He was a creditor whose rights had previously attached, and those rights cannot be swept away by such a scheme as this bylaw." We think this succinct statement is the law applicable to the present situation.

The cases cited in opposition are, upon examination, not found to be in opposition to this principle. The case of *Floyd* v. *Medroes,* 55 R. I. 163, has no application because it involved a question of whether there was any bylaw in force during the life of the member, which provided for a death benefit after his decease. The case of *Quigley* v. *Locomotive Engineers' Mutual Life & Accident Ins. Ass'n,* 279 N. Y. S. 858, also involved death benefits, and the amendments involved were made during the lifetime of the certificate holder, and by virtue of provisions in the constitution of the society. The case of *Grant* v. *Providence Permanent Firemen's Relief Association,* 53 R. I. 201, involved the amendment of a bylaw so that sickness meant a disability from doing some kind of remunerative work. This case is of no aid because the bylaws of 1922 in the instant case expressly provided for the payment of benefits during the period of illness. The case of *Pain* v. *Societe St. Jean Baptiste,* 172 Mass. 319, was modified by *Newhall* v. *American Legion of Honor,* 181 Mass. 111, and also distinguished, because in the first case the plaintiff had consented to be bound by new bylaws, not as a new contract, but as a part of the old contract and under its provisions. In *Stohr* v. *San Francisco Musical Fund Society,* 22 Pac. (Cal.) 1125, the general laws of the State gave a society the right to repeal, alter or amend its bylaws, and in that case they also held that an amendment changing the contract could not be made if the payments were to continue as long as sickness continued. It will be observed that the bylaws in the present case provided that the benefits "will be paid for the entire period of illness, minus the first 7 days."

We entertain no doubt that bylaws changing appellant's rights after they had become vested would not bind him. Appellee claims, however, that the power reserved to amend the bylaws authorized the change made in the benefits payable to appellant. Section 74 of the constitution and bylaws of 1922 is as follows: "This Constitution and By-Laws can be amended as follows: Any three members may over their signature, present to the union, at any regular meeting, any amendment or alteration to this constitution, and after being read at two regular meetings, shall lay over to the next regular meeting when it shall be voted upon. If the amendment or alteration receives a two-thirds vote it is adopted." There is nothing in this section by which any member consents that any vested right may be taken from him.

In *Covenant Mutual Life Ass'n* v. *Kentner,* 188 Ill. 431, where this question was discussed, we said: "It was stipulated that the bylaws contained a provision that they might be amended, revised or modified, but that is no more than the law would imply without the stipulation. Such power is implied from the general power to enact by-laws. (3 Am. & Eng. Ency of Law, (2d ed.) 1064; *Fullenwider* v. *Royal League,* 180 Ill. 621.) If a member agrees that future by-laws or amendments shall enter into and form a part of his contract and modify or vary it, he will be bound by such by-laws or amendments because they are a part of his contract. * * * Even if the certificate states that the by-laws are a part of the contract and that they are subject to amendment, subsequent by-laws will be construed to apply only to contracts made after the adoption of such by-laws, in the absence of an agreement that they shall have a retrospective effect. This is upon the principle that all laws and by-laws have a prospective and not a retrospective effect, unless the intent that they shall have a retrospective effect is clear and unmistakable. Unless there

is an express agreement that a member shall be bound by future by-laws varying or modifying his contract, he is not so bound."

In *Peterson* v. *Gibson,* 191 Ill. 365, we held that a provision in the constitution of a mutual aid association that the constitution could be amended or changed by vote of the members could not be construed to authorize an amendment or change which should act retrospectively and impair the obligation of the contract entered into, between the association and the member, unless there was an express agreement to be bound by future bylaws, which affected the member's contract injuriously.

Section 74 of the bylaws was not sufficient to change or destroy the right of plaintiff, which became vested upon his becoming sick within the terms of said bylaws.

It is urged that the acceptance of $20 per week under the amended bylaws amounted to an implied contract to abide by and be bound by them. In *Cumber* v. *Wane,* 1 Strange, 425, it was held that giving a note for five pounds cannot be pleaded as a satisfaction for a debt of fifteen pounds, and following this it has been definitely held in Illinois that the payment of a lesser sum in satisfaction of a larger sum due and owing does not cancel the original obligation, even though expressly accepted in discharge thereof, because such a promise is without consideration.

In *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626, in holding that the payment of the sum of $6045 in satisfaction of $12,000 due upon a life insurance policy did not bar the beneficiary from recovering the balance, we said, quoting from *Bailey* v. *Day,* 26 Maine, 88: "The authorities are numerous, and, it is believed, uniform, that the payment, in money, of a debt due and payable in money, by the debtor, at the place where he was bound to make it, of a sum less than the full amount, and at the

same time an agreement of the creditor to discharge the residue, will not operate as a defense to a suit for the balance. The reason is obvious: The agreement of discharge is without consideration. * * * By the payment of a part, the defendants laid no foundation for an obligation in the plaintiff, but merely made discharge, *pro tanto,* for their own, which they had long omitted. See also *Pinnel's case,* 5 Coke, 117; *Heathcote* v. *Crookshanks,* 2 T. R. 24; *Cumber* v. *Ware,* 1 Strange, 426." To the same effect see *Hart* v. *Strong,* 183 Ill. 349, and *Goldsborough* v. *Gable,* 140 id. 269. If appellee was unable to discharge its obligation under the original contract by express contract, it certainly would be unable to do so under an implied contract.

It is also contended that the acceptance by appellant for the period of ninety-two weeks of $20 constituted an accord and satisfaction of what was due under the bylaws in existence at the time he was injured. One of the absolute essentials of an accord and satisfaction is that there exist a *bona fide* dispute as to an amount due between the parties. (*In re Estate of Cunningham,* 311 Ill. 311; *Shirley* v. *Ellis Drier Co.* 379 id. 105.) How can there be said to be a *bona fide* dispute when appellee without objection paid the sums due under the 1922 bylaws for over eight years? Apparently the theory is that by amending the constitution they have created a *bona fide* dispute by their own act. We have been referred to no case, and we believe none can be cited, which authorizes one party to a contract, which is in course of performance, to create a situation which changes the vested rights of the parties, and then contend that the situation thus brought about creates a *bona fide* dispute which will authorize the payment of a less sum in satisfaction of a greater.

It is also contended appellee is bound upon the theory of ratification. This theory amounts to no more than the

contention that the greater sum can be satisfied by the payment of the lesser. It is but urging in another way that appellee, through its own act in changing its bylaws, and paying the amount specified thereunder, may escape liability. In any of the cases in which it is attempted to satisfy a greater sum by the payment of a lesser, ratification could be claimed by the acceptance of a lesser sum. But as pointed out above, this defense is ineffective even in the case of an express agreement to take less, and hence ratification as an acquiescence in such lesser payments would be equally ineffective.

It is also contended by appellee that contracts of this type, made by a labor union, should be considered and decided upon a different basis than contracts of insurance or benefit companies, because of proof offered that the burden of its sick benefits under the bylaws of 1922 was greater than they had anticipated. The same contention was made in *Covenant Mutual Life Ass'n* v. *Kentner, supra,* where we said: "As to any other contract no one would think of saying that one party can annul the agreement and make another to suit its convenience without the consent of the other party, or that expediency or inability to continue business would warrant repudiating the contract and substituting another. Whatever theories might arise as to duties and obligations not founded upon contract, wherever there is a contract its terms must control the rights of the parties. The law does not undertake to make or modify contracts, whether relating to insurance or to some other subject, but it enforces contracts as the parties themselves have made them." We cannot accept the doctrine that a party competent to contract may, because of the peculiar nature of its organization, have a different law applied to it than other contracting parties.

At the close of the evidence in the case the plaintiff moved for a directed verdict, and also for a judgment notwithstanding the verdict, both of which were refused by

the court. There is no dispute as to the facts in this case. The sickness of plaintiff is not denied; the failure to pay in accordance with the bylaws of 1922 is not disputed. The defenses alleged by appellee were not available as a matter of law, so the whole question resolved itself down to whether, under the proved facts, the plaintiff, as a matter of law, was entitled to recover. Under this situation the Supreme Court is empowered to review a decision of the trial court, and determine whether the facts, as a matter of law under the competent proof, entitled plaintiff to recover the sum demanded. (*Becket* v. *Woolworth Co.* 376 Ill. 470; *Rotche* v. *Buick Motor Co.* 358 id. 507; *Pralle* v. *Metropolitan Life Ins. Co.* 346 id. 58.) The competent evidence in this record shows that the appellant was entitled to recover, and that the appellee had no defense.

The judgments of the Appellate Court for the First District and of the circuit court of Cook county are reversed, and the cause is remanded to the circuit court with directions to enter judgment in favor of the plaintiff for the sum of $3193.

*Reversed and remanded, with directions.*