Dan P. Crowley, Appellee and Cross Appellant, v. Milk Wagon Drivers' Union, Local No. 753, etc., et al., Appellants and Cross Appellees.

Gen. No. 42,360.

326

Heard in the second division of this court for the first district at the October term, 1942.

Opinion filed March 8, 1944. Rehearing denied March 22, 1944.

DAVID A. RISKIND, of Chicago, for appellants and cross appellees.

JOSEPH S. GRANT, of Chicago, for appellee and cross appellant; HENRY W. KENOE, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Defendants appeal from a certain part of an equity decree entered in the above cause. Plaintiff, in a cross-appeal, appeals from another part of the decree.

Plaintiff sued to recover sick benefits under the Union's sick benefit by-laws. The following are the relevant provisions in the sick benefit by-laws that were in force when plaintiff sustained his injuries:

"A sick benefit shall be paid to members in good standing of Twenty ($20.00) Dollars per week.

"No benefit shall be paid for any sickness of less than 14 days, the first 7 days of this does not draw benefit, but if sick 14 days or more, then a benefit will be paid for the entire period of illness minus the first 7 days. As soon as 90 days of benefit has been paid a member, if he is still sick his dues stop and he draws two ($2.00) dollars per week extra for his wife and each child under 16 years."

The cause was referred to a master in chancery, who took evidence and reported his findings of fact, conclusions of law, and a recommendation that a decree be entered in favor of plaintiff in accordance with the prayer of the complaint. The chancellor sustained the master in part and overruled him in part, and entered a money decree in favor of plaintiff and against defendants in the sum of $4,577.75 and costs.

The master found, *inter alia,* that the Union had a membership of over 6,000 men; that the members were engaged in the business of retail distribution of milk and dairy products; that plaintiff became a member of the Union on January 27, 1927, paid his initiation fee of $100, and thereafter paid all required dues to the Union until August 15, 1927, and ninety days thereafter; that on August 15, 1927, plaintiff sustained an injury to his right arm which incapacitated him from performing his work as a milk wagon driver; that shortly after he was injured he returned to work on a milk wagon, but with the aid of a helper; that his arm became worse and after five weeks he was advised by the Union physician to desist from said employment because he was physically unable to perform the said work; that the Union physician reported his finding to the Union and thereupon the Union commenced paying plaintiff the sum of $32 per week; that at the time plaintiff suffered the said disability and sickness he was a married man and head of a family composed of the following persons: Margaret Crowley, his wife, then 33 years of age; Catherine M. Crowley, daughter, then 6 years of age; Eleanor L. Crowley, daughter, then 5 years of age; Daniel J. Crowley, his son, then 3 years of age; Margaret M. Crowley, daughter, then 2 years of age, and Loretta A. Crowley, daughter, then 1 year of age. The master further found that the Union paid to plaintiff weekly payments of $32 until January 1, 1936, and thereafter refused and failed to pay any sick benefits to plaintiff

and has not paid him any since that time; that the refusal of the Union to make said payments was based entirely upon certain amendments to the by-laws that went into effect January 1, 1936 [these amendments were not binding on plaintiff—see, *Fichter v. Milk Wagon Drivers' Union*, 382 Ill. 91]; that in July or August, 1935, the president of the Union stated to plaintiff that the Union was financially unable to continue the payments to plaintiff and suggested to plaintiff that he make a compromise in full for all moneys that might accrue to him; that the president stated to plaintiff that the Union was about to adopt an amendment to the by-laws which might seriously affect plaintiff's rights to the sick benefits that were then being paid to plaintiff; that plaintiff refused to compromise; that on January 14, 1936, plaintiff paid to the Union the sum of twenty-five cents and obtained a withdrawal card from the Union; that plaintiff obtained the withdrawal card because he was unable to to pay his monthly dues and by obtaining the card he was able to keep in good standing in the Union; that he, in fact, became an inactive member; that prior to January 1, 1936, plaintiff regularly visited the Union physician and submitted himself to examinations by said physician, in accordance with the by-laws of the Union, and the physician reported his findings to the Union; that since said injury to plaintiff and until June 1, 1936, plaintiff was unemployed and received no income except the moneys that he was obtaining from defendant Union; that subsequent to January 1, 1936, he attempted to obtain employment but was unsuccessful; that he received the sum of $18 per month relief from the government; that he was successful in obtaining odd jobs but received very little income therefrom; that for the past year and one-half he has been working as an orderly at Hines Hospital and is receiving therefor the sum of $25.50 every two weeks, plus his room and board; that plaintiff's arm has improved somewhat since his injury and since his last

examination by the Union doctor prior to June 1, 1936; that he is still incapable of executing the duties required of him as a milk wagon driver; that he has searched for work in another craft but has been unable to obtain employment due to his physical handicap; that his schooling was confined to the eighth grade in the elementary schools; that his present occupation at the Hines Hospital consists of light work and his arm injury does not prevent him from fulfilling his duties at that job. The following are the conclusions of the master so far as they apply to the instant appeal and cross-appeal: That plaintiff has a right to obtain benefits from the Union for the entire period of his incapacity; that defendant has failed to prove that plaintiff is capable of performing the duties required of him in another craft or that he has wilfully refused to obtain such other employment; that the master does not believe that the withdrawal card obtained by plaintiff has any bearing on this matter, inasmuch as it was obtained after the adoption of the amendments and after the refusal by the Union to continue the sick benefit payments; that this in itself does not show an intent on the part of plaintiff to relinquish his claim against the Union; that ''the Master therefore believes that plaintiff is entitled to receive from the union the sum of $32.00 per week from January 1, 1936, until November 7, 1936; the sum of $30.00 per week from November 7, 1936, to November 13, 1937, and the sum of $28.00 per week from November 13, 1937, until the entry of a decree in this cause; that a decree in the nature of a judgment at law should be entered for said amount and that execution issue therefor. The Master finds that the equities of the case are with the plaintiff and against the union.''

The following are the only parts of the decree that need be considered:

''15. That the court construes the By-Laws of the defendant union and the sick benefit provisions thereof so that the acceptance by the plaintiff of any employ-

ment whatsoever constitutes a waiver of the right to further benefit payments; that the acceptance by the plaintiff of employment as a hospital attendant at the Hines Hospital conducted by the Veterans Administration at Hines, Illinois, constitutes a waiver by the plaintiff of any right to further benefits and constituted an employment in some other craft within the meaning of the By-Laws of the defendant union; that the plaintiff is therefore entitled to receive sick benefits under the original By-Laws of the defendant union up until his acceptance of such employment, that is, until the 22nd day of September, 1938;

"16. That the plaintiff is entitled to receive from the defendants and the defendant union, in accordance with the terms and provisions of the By-Laws and in accordance with the decision of this court as above indicated, the following:

"The sum of $32.00 per week from January 1, 1936, until November 7, 1936, or towit: the sum of    $1440.00

"The sum of $30.00 per week from November 7, 1936, until November 13, 1937, or towit: the sum of    1590.00

"The sum of $28.00 per week from November 13, 1937, until September 22, 1938, or towit: the sum of    1246.00

"Or a total sum of ......................$4276.00

"17. That the plaintiff is entitled to a decree in the nature of a judgment at law for the amounts so due him and that execution should issue therefor; that the equities in the case are with the plaintiff and against the defendants."

Defendants appeal from paragraphs 16 and 17 and ask that they be reversed, but they also ask that paragraph 15 be affirmed.

Plaintiff, in his cross-appeal, asks that paragraphs 16 and 17 be affirmed and that paragraph 15 be re-

versed, and that the cause be remanded with directions to incorporate in the decree in lieu of paragraph 15 a paragraph finding that plaintiff's right to sick benefits continues.

At the time the briefs were filed in this court in the instant case the Supreme Court had not decided *Fichter v. Milk Wagon Drivers' Union, supra.* Because of that decision, upon the oral argument of this cause, counsel for defendants stated that they would rely upon one point, *viz.,* that the Union had the right to cease paying the sick benefits to plaintiff when he requested and accepted a withdrawal card from the Union in January, 1936. If defendants made that point in their brief, it must be found in the following contention made by them: "Plaintiff's conduct in accepting his last payment after notification that this was his last payment in accordance with the provision of the 1936 amendments and his request and acceptance of the withdrawal card in January of 1936 when he received what he knew was his last payment showed an implied contract to A. Conform to the benefit provision of the 1936 by-laws. B. And to withdraw from the Union." In the *Fichter* case the defendants made the same contention, in the same language, save as to the date. We held, in *Fichter v. Milk Wagon Drivers' Union,* 312 Ill. App. 40, that this contention of the defendants was a meritorious one. But the Supreme Court (*Fichter v. Milk Wagon Drivers' Union, supra,* 382 Ill. 91) reversed our holding as to that contention and entered judgment in favor of plaintiff. While it is true that the Supreme Court, in so holding, did not specifically refer to the withdrawal card it is clear that it considered the effect of the withdrawal card in reaching its conclusion. The master found that "the withdrawal card obtained by plaintiff has no bearing on this matter, inasmuch as it was after the adoption of the amendment, and after the refusal of the association to continue the payments.

This in itself does not show an intent on the part of the plaintiff to relinquish his claim against the union." This finding was confirmed by the chancellor. The evidence warrants the conclusion that when plaintiff was refused further payments of sick benefits he accepted the withdrawal card in order to preserve his rights in the Union. The withdrawal card, itself, shows that upon acceptance of the card plaintiff did not wholly sever his relationship with the Union; that he merely became an inactive member. Without such a card he would lose his Union rights. With the card he can return to the Union without repayment of an initiation fee or accumulated dues and with seniority rights. We hold that it would be highly inequitable to permit the Union to refuse to fulfill its obligations to plaintiff merely because plaintiff accepted the withdrawal card, and we are satisfied that the opinion of the Supreme Court in the *Fichter* case sustains this holding. There is considerable force in the argument of plaintiff that his act in accepting the withdrawal card was not a voluntary one and that the unwarranted conduct of the Union in refusing to pay the sick benefits forced him to accept the withdrawal card. We are satisfied that there is no real merit in the sole point raised by defendants.

As to the contention raised by plaintiff upon his cross-appeal: The chancellor found in paragraph 15, *inter alia,* that plaintiff was entitled to receive sick benefits until he accepted employment as a hospital attendant at the Hines Hospital; that the acceptance of such employment by plaintiff "constitutes a waiver of the right to further benefit payments," and "constituted an employment in some other craft within the meaning of the By-Laws of the defendant union." Plaintiff contends that the chancellor erred in so holding. The only provision in the by-laws of the Union that has any possible bearing upon the court's finding is sec. 42 of the original by-laws, which reads, in part,

as follows: ''B. When a man stops driving a milk wagon and goes to work at another craft, the Secretary-Treasurer must take no more dues of him, and he will not be entitled to sick or death benefits.'' Webster's New International Dictionary defines ''craft'' as follows: ''Art or skill; dexterity, as in some manual employment; skillfulness in planning or executing; hence, an occupation or employment requiring this; a manual art; a trade, business, or profession.'' Plaintiff in his employment at Hines Hospital was not working at a craft, within the meaning of that term as it is used in sec. 42, and the chancellor erred in holding that he was. Moreover, sec. 42 applies solely to a member who goes to work at another craft at a time when he is not on the benefit list. That section also provides that after the member changes to another craft the secretary-treasurer must take no more dues from him. A member already on the benefit list does not pay dues, because the sick benefit provisions in the old by-laws provide that ''As soon as 90 days of benefit has been paid a member, if he is still sick his dues stop.''

But defendants now contend that even if the chancellor's reason for holding that plaintiff was not entitled to future sick benefits was unsound, in any event, '' 'sick benefits' mean total permanent incapacity or disability from carrying on any duties of any gainful business or occupation,'' that the evidence shows that plaintiff is capable of doing light work, and therefore ''plaintiff is not entitled to recovery because he does and is able to do some work.'' Plaintiff contends that ''the term 'sickness' as used in the by-laws means a diseased or disordered condition which prevents the plaintiff from engaging in his duties as a milk wagon driver.'' As there is no provision in the by-laws that covers the instant contention raised by defendants the question involved therein must be determined upon equitable grounds. We may say, however, that the pre-

sent contention of defendants is clearly an afterthought. Plaintiff sustained the injury in 1927 and the evidence shows that defendants' doctor then advised the Union that plaintiff was disabled so far as the craft was concerned and that the condition was permanent. Thereafter defendants' doctor examined plaintiff from time to time and reported to the Union his findings. The Union paid plaintiff the sick benefits created by the by-laws from 1927 until January 1, 1936, upon the theory that plaintiff was " 'sick' within the meaning of the by-laws," but they now ask us to give a different meaning to the by-laws, one that the officers of the Union had not in mind when plaintiff's sick benefits were stopped: We have heretofore referred to the findings of the master as to the acts of the officers of the Union in 1935, whereby they attempted to coerce plaintiff into accepting a compromise of his rights to sick benefits. We refer to the financial condition of the Union at that time in our opinion in *Fichter v. Milk Wagon Drivers' Union*, 312 Ill. App. 40, 58. The records of this court, in a number of cases that were brought against the Union, show that about November or December, 1935, it was attempting to avoid the payment of sick benefits in cases akin to the instant one.

We cannot agree with defendants' contention nor with plaintiff's contention as to the meaning of the words "sick benefits" in the by-laws. To adopt defendants' interpretation would be to hold that if plaintiff sold peanuts or shoe laces, or lead pencils, upon a street corner he would be doing business of a gainful nature and therefore would not be entitled to sick benefits under the by-laws. To adopt plaintiff's interpretation would be to hold that if plaintiff followed the business of a bookkeeper, or some other avocation, and received a very substantial sum per week for his work, he would still be entitled to the sick benefits. The by-laws must be given a

reasonable interpretation. In *Plattdeutsche Grot Gilde v. Ross,* 117 Ill. App. 247, the by-laws of the fraternal benefit society provided for the payment of sick benefits where a member is "sick and unable to work." The Gilde contended that the plaintiff was not entitled to sick benefits unless he was "sick and unable to work." In passing upon this contention the court said (p. 252): "The uncontradicted proof shows that he was a carpenter and lost the use of his left arm permanently in consequence of a building falling on him May 6, 1896; that he was unable to do any work up to November 5, 1901; that at the time of the trial (June 1903) he 'was able to do a little.' 'I have done no hard work since I was injured. I do a little light carpenter work, make some mosquito frames, anything light I can take hold of. I have been suffering ever since I got hurt.' On cross-examination appellee testified: 'I can hardly do any work to-day.' We cannot concur in the contention of appellant's counsel that 'to obtain sick benefits a member must be actually sick and so sick as to be unable to do work of any kind. He cannot draw sick benefits and earn money at the same time.' If this construction of the words 'sick and unable to work' be correct, it would follow that a person who earned $5 a day before he became sick would have no right to a benefit if capable of earning ten or twenty cents a day, or any sum, however small, afterwards. The by-law must receive a reasonable construction. Its meaning evidently is that so long as a man is not restored to his full health and is substantially unable to do such work or make such a living as he did before, he is entitled to the benefit. *Genest v. L'Union,* 141 Mass. 417; Niblack on Benefit Societies, 2nd ed., par. 403." It will be noted that in the instant case the sick benefit provisions contain no such qualification as the words "unable to work," that are contained in the Plattdeutsche Grot Gilde sick benefit by-laws. Even in cases that involve accident policies that

contain a total disability clause it has been held that it was not necessary in order to entitle the insured to payment that he should be disabled to such an extent as not to have sufficient physical power to follow some easy occupation or perform some slight labor. *Berry v. United States*, 312 U. S. 450, involved a case under the War Risk Insurance Act that required plaintiff to be "totally and permanently disabled." Berry, while serving in the front lines in France was wounded in the right arm, right shoulder, right hip and in front of the right ear, and his left leg was amputated. After returning to the United States he bought a farm. He was compelled to depend upon the work of his own family and relatives in this undertaking, but the venture was a failure and he lost the farm. He tried to operate a garage in partnership with another. In this, too, he was unsuccessful. For a time he was engaged as a salesman of aluminum cooking utensils. The government contended that upon the evidence plaintiff had not made out a case of total and permanent disability. The Supreme Court in passing upon the contention states (pp. 455, 456):

"It was not necessary that petitioner be bedridden, wholly helpless, or that he should abandon every possible effort to work in order for the jury to find that he was totally and permanently disabled. It cannot be doubted that if petitioner had refrained from trying to do any work at all, and the same evidence of physical impairment which appears in this record had been offered, a jury could have properly found him totally and permanently disabled. And the jury could have found that his efforts to work—all of which sooner or later resulted in failure—were made not because of his ability to work but because of his unwillingness to live a life of idleness, even though totally and permanently disabled within the meaning of his policies."

In January, 1936, the Union took plaintiff off the sick benefit list, *but not because he was not "sick" with-*

*in the meaning of the old by-laws.* He had a wife and five small children. The instant suit was commenced on May 8, 1936. Plaintiff was without employment until September, 1938, when he started to work at Hines Hospital. Counsel for plaintiff insist that the latter was confronted with a situation where he had to accept what the Union might be willing to pay him in compromise of his claim or seek work of some kind in order to support himself and family, regardless of his physical condition. The evidence shows that the work done by him in the hospital is light, and consists of answering the calls of patients, bringing them a glass of water, or similar nonarduous duties, for which he receives the sum of $12.75 per week plus his room and board. The master found that his occupation at the Hines Hospital consisted of light work and that his arm injury did not prevent him from fulfilling his duties.

If the position of defendants as to the effect of plaintiff's employment at the hospital is not sound, then plaintiff, under the old by-laws, was entitled to $32 per week until November 7, 1936, when his daughter Catherine attained the age of 16 years; and thereafter he was entitled to the sum of $30 per week until November 13, 1937, when his daughter Eleanor attained the age of 16 years; and thereafter he was entitled to $28 per week. The amount paid plaintiff for sick benefits was apparently fixed at a sum that the Union deemed necessary for the support of plaintiff, his wife, and children under 16 years of age during plaintiff's sickness. In our judgment, the amount of the sick benefits paid plaintiff furnishes an equitable basis for determining what effect, if any, his employment at the hospital had upon his right to sick benefits. If plaintiff were receiving from the hospital that amount, or approximately that amount, then, in equity, the Union should have the right to discontinue the payment of the sick benefits. But the hospital is not pay-

ing plaintiff that amount, nor approximately that amount, and the Union should, in equity, continue to pay the sick benefits under the present situation.

The decree of the circuit court, save as to paragraph 15, is affirmed. As to paragraph 15 the decree is reversed, and the cause is remanded with directions to the chancellor to substitute in lieu of paragraph 15 a paragraph finding that plaintiff is entitled to sick benefits.

*Decree affirmed in part, reversed in part, and remanded with directions.*

FRIEND, P. J., and SULLIVAN, J., concur.