Samuel Horwitz, Appellant, v. Milk Wagon Drivers' Union, Local 753, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America et al., Appellees.

Gen. No. 45,122.

Heard in the first division of this court for the first district at the April term, 1950. Opinion filed June 19, 1950. Released for publication September 7, 1950.

RUSSELL J. TOPPER, of Chicago, for appellant.

DAVID A. RISKIND, of Chicago, for appellees.

Mr. Presiding Justice Tuohy delivered the opinion of the court.

Plaintiff filed his suit in equity against Milk Wagon Drivers' Union, Local 753, an unincorporated association, and James G. Kennedy and Thomas Haggerty, as President and Secretary-Treasurer, respectively, seeking to recover $3,500 alleged to be due as accrued sick benefits, and for the entry of a decree directing the union to pay plaintiff the sum of $20 per week during the period of his disability.

The complaint alleges that plaintiff became a member of the union about February 1, 1923, and that at that time there was in force and effect by-laws which had been enacted on January 1, 1922, providing in part:

". . . Sick benefit will be paid to members in good standing of Twenty Dollars ($20.00) per week.

"No benefits will be paid for any sickness of less than fourteen (14) days, the first seven (7) days of this does not draw benefit but if sick fourteen days or more, then a benefit will be paid for the entire period of illness minus the first seven days."

The complaint further alleges that plaintiff paid all dues and assessments from the date of his admission for a period of twenty-five years immediately thereafter and was continuously a member in good standing; that on June 11, 1946, while in the performance of his duties as a milk truck driver, he was seriously injured and as a consequence became permanently disabled; that he thereupon became entitled to receive sick benefits in the sum of $20 weekly from the beginning to the termination of his disability; that the union paid him the sum of $20 per week for a period of twenty-six weeks from the date of the disability but refused to pay any sick benefits thereafter. Plaintiff thereupon prayed for a judgment in the sum of $3,500, together with a decree directing the union to pay him the sum

384

of $20 per week during the entire period of his disability, and for other relief.

The answer, after denying the disability in general terms, alleged that at the time of plaintiff's admission to the union section 74 of the bylaws provided that they might be amended at any subsequent time and provided for the manner of so doing. It further alleged that on January 1, 1941, new bylaws were passed cancelling and superseding previous bylaws pertaining to sick and death benefits. The new bylaw provided substantially that in no case of disability shall a member be entitled to receive more than twenty-six weeks of continuous benefits. It further provided that an amendment should be retroactive as to all members and as to all bylaws. The answer alleges that the payment of $20 a week for twenty-six weeks was in full of all indebtedness.

A motion was filed to strike the answer on the ground that the January, 1941 bylaws could not operate retroactively to defeat plaintiff's vested contractual rights to sick benefits in the amount and under the conditions fixed by the bylaws of 1922. An order denying plaintiff's motion to strike the defenses was entered. The plaintiff elected to stand on his motion to strike the answer and thereafter a decree was entered dismissing the complaint, from which decree this appeal is taken.

Plaintiff contends that under the bylaws in effect at the time he joined the union he acquired vested contractual rights which could not be lawfully impaired subsequently without his consent. Defendants maintain that the plaintiff acquired no rights under the bylaws of 1922 which were not subject to future amendment and that by the amendment of 1941, which was some years prior to the occurrence of the disability, plaintiff's right to recover was limited to twenty-six weeks.

██ In determining the issue we must look to the provisions of the constitution and bylaws in force and effect at the time that the plaintiff became a member of this labor union. We do not have here, as is frequently the case, a separate certificate of benefit containing a particular recital of contractual obligations and liabilities. This association was not an insurance company but a labor union, and the provision by way of sick benefit was merely incidental to the main purposes of its organization. The 1922 bylaws provide that upon occurrence of a disability "sick benefit will be paid to members in good standing of Twenty Dollars ($20.00) per week." However, in another section of the same instrument it was provided that "this Constitution and By-laws can be amended." The provision with reference to amendment, it seems to us, was of equal dignity as the provision which set forth the benefit. It would appear, therefore, that plaintiff acquired no such vested interest in and to a $20 a week sick benefit provision as could not be amended by subsequent change. In the case of *Steen v. Modern Woodmen of America,* 296 Ill. 104, the court said (pp. 110, 111):

"A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties and his liabilities. . . . The power to enact by-laws is inherent in every corporation as an incident to its existence. This power is a continuous one, and no one has a right to presume that by-laws will remain unchanged."

We repeat that in this case there is no separate certificate or policy, or instrument whatsoever, which gives to the plaintiff rights over and above or exclusive of those provided in the bylaws. Whatever rights the plaintiff has herein are determined by the bylaws and he may not claim those provisions of the bylaws which are to his advantage and denounce those which are

386

unfavorable to his present contention. His case must stand or fall upon the constitution and bylaws as a whole.

In the case of *Jenkins v. Talbot,* 338 Ill. 441, there was a provision in the certificate of membership that the member would be bound by the existent rules of the society or rules thereafter enacted. After plaintiff became a member of the society an amendment was passed increasing the amount of the assessment in force at the time of his joining the society. It was shown that the original actuarial setup had become unsound. The same contention was there made as here, namely, that the plaintiff had a vested property right under the bylaws in force at the time of his admission which could not be diminished or destroyed by subsequent action of the society. In denying this contention, the court said (pp. 466, 467):

"The society was organized upon the principle of equality and mutuality among its members, and where that principle has been departed from the welfare of the society requires a re-adjustment of its affairs to restore the condition of mutuality and equality. Its power to amend its by-laws includes the power to raise the rates to such point as is necessary to enable it to go on, and this although the by-laws expressly provide that each member shall pay the same amount on his assessment so long as he remains a member. . . . Even a change from the assessment plan of insurance to the legal reserve flat premium plan is within the power of a fraternal beneficiary society where the right to amend the by-laws and to bind the members by after-enacted by-laws is reserved by the contract of insurance."

In *Floyd v. Medroes,* 55 R. I. 163, plaintiff sued the Cigar Makers' International Union of America, an unincorporated labor union, for $300 claimed as a beneficiary of a death benefit. The question presented

was whether the certificate was in force at the time of the member's death. The constitution of the union at the time the member joined provided a $300 death benefit. Later, by a vote of the union as provided by its constitution, the death benefit was eliminated, although the insured voted against this change. The court, after commenting upon the fact that the union was not a fraternal benefit society but a labor union whose main purpose was obviously the protection and advancement of the interests of its members as laborers in the cigar-making industry and that the death benefit was only incidental to the main purpose, said at page 169:

"It is our conclusion that he (the member) had only such rights as the constitution of the union provided from time to time for the members of his class, and that these rights, so far as death benefits were concerned, could be changed or annulled at any time by any change made in the constitution by the union, in accordance with the provisions for amendment contained in the constitution itself. This conclusion is strongly supported by the opinion of this court in *Grant v. Providence Permanent Firemen's Relief Association,* 53 R. I. 201, and the cases cited therein."

Plaintiff relies strongly on the case of *Covenant Mut. Life Ass'n v. Kentner,* 188 Ill. 431, where it was held that there being no agreement that Mr. Kentner's contract might be changed by any future bylaw, a change which attempted to levy an additional assessment was in violation of his rights. However, this case is distinguished by the fact there was nothing in the contract making any reference to the bylaws and there was nothing in the record to show what bylaws were in force when the certificate was issued. In the instant case, as above pointed out, the same bylaws which provided for the $20 a week benefit also provided that they might subsequently be changed. The cases of

*Fichter v. Milk Wagon Drivers' Union, Local 753,* 382 Ill. 91, *Olinski v. Milk Wagon Drivers' Union, Local 753,* 320 Ill. App. 487, and *Jansen v. Milk Wagon Drivers' Union, Local 753,* 320 Ill. App. 435, are not in point here for the reason that in those cases the attempt to amend the bylaw to the prejudice of the member in each instance occurred after the disability had arisen. In the instant case the disability did not arise until some five years subsequent to the amendment of 1941 which not only changed the disability provision but provided "such amendments shall be understood to be retroactive as to all members and as to all by-laws." The reasoning of the cases above is based upon the equitable proposition which is stated in *Fichter v. Milk Wagon Drivers' Union* as follows, at page 95:

"Upon the first question it would appear upon principle that where a member had made his monthly benefit payments in accordance with the bylaws and became sick and entitled to a benefit, which was being paid, it would not be reasonable or just to allow payments to be avoided by the adoption of a bylaw discharging the debtor from liability. No authorities directly in point from this State have been cited, but such appears to be the rule in other jurisdictions."

It is also to be noted that the *Fichter* case approved the language of *Becker v. Berlin Beneficial Society,* 144 Pa. 232, including this significant statement:

"The argument that the plaintiff, being a member of the society, is bound by the by-law, does not meet the difficulty. *It may be a good by-law as to future cases,* but at the time it was passed the plaintiff was something more than a member. He was a creditor whose rights had previously attached, and those rights cannot be swept away by such a scheme as this by-law." (Italics ours.)

We are therefore of the opinion that the proper conclusion is reached in this case and the decree of the circuit court of Cook county is affirmed.

*Affirmed.*

NIEMEYER and FEINBERG, JJ., concur.